**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MICHAEL SIMONS | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:19-CV-01547(VAB) |
| | : | |
| v. | : | |
| | : | |
| YALE UNIVERSITY, | : | |
| PETER SALOVEY, | : | |
| ROBERT ALPERN, M.D., | : | |
| UNKNOWN PERSONS | : | |
| Defendant. | : | November 27, 2019 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AND
MOTION TO STRIKE AND FOR MORE DEFINITE STATEMENT**

The plaintiff, Michael Simons, brings this lawsuit in a scattershot attempt to resurrect a previous action in which he alleged breach of contract by the defendants Yale University ("University") and Peter Salovey.  In that prior action, he sought unsuccessfully to enjoin his removal from the Waldemar von Zedtwitz Professorship by Yale University, and voluntarily withdrew the case when the defendants moved to dismiss it.

By motion dated November 27, 2019, the defendants Yale University, Peter Salovey, and Robert Alpern, M.D. ("University Defendants"), have moved to dismiss the nine-count Complaint filed by the plaintiff on October 1, 2019 as

time-barred and for failing to state a plausible claim upon which relief can be granted, and have further moved to strike or in the alternative for a more definite statement of the plaintiff's allegations concerning "unknown persons." The University Defendants submit this Memorandum of Law in support of that Motion.

## I. **BACKGROUND**

The Complaint alleges the following facts, which are assumed as true as required for the purposes of this Motion: In 2013, the Yale University-Wide Committee on Sexual Misconduct ("Committee") concluded that the plaintiff had sexually harassed a junior colleague. Compl. ¶¶ 18, 20-21. The plaintiff was suspended for eighteen months. *Id.* at ¶ 22. In 2013, the plaintiff resigned as Chief of Cardiology. *Id.* at ¶ 23. In 2013, the plaintiff was removed as Director of the Cardiovascular Research Center. *Id.* On June 22, 2018, the plaintiff was transferred from the Robert Berliner Professorship to the Waldemar Von Zedtwitz Professorship. *Id.* at ¶ 31. On September 21, 2018, the plaintiff was removed from the Von Zedtwitz Professorship. ¶ 38.

On September 21, 2018, the plaintiff filed an application for injunction and complaint in Connecticut Superior Court, seeking an order enjoining the

University from removing him from the Von Zedtwitz Professorship, which the Court denied. *See Simons v. Yale University et al.,* NNH-CV18-5043992-S, Doc. 102; Compl. ¶ 39.  On November 11, 2018, the University moved to dismiss the action for lack of jurisdiction resulting from insufficient service of process and insufficient process, and for failure to verify the complaint. *Simons, supra,* Doc. 105.  The plaintiff's opposition was due on December 11, 2018.  On January 3, 2019, the plaintiff withdrew the action. *Id.,* Doc. 107.

On February 28, 2019, the plaintiff filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("Commission") alleging violations of Conn. Gen. Stat. 46a-60(a)(1) and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII"). *See* Exhibit A; Compl. ¶ 41. On June 11, 2019, the Commission dismissed the plaintiff's complaint because his removal from the Von Zedtwitz Professorship "was based on the Complainant's previous violation of the Respondent's sexual misconduct policy, not the Complainant's protected classes." *See* Exhibit B.  On the same date, the Commission released its jurisdiction over the plaintiff's complaint. *See* Exhibit C; Compl. ¶ 41.

On October 1, 2019, the plaintiff filed the instant complaint, alleging

breach of contract, breach of the implied warranty of fair dealing, wrongful

discharge, negligent infliction of emotional distress, violation of Title IX of the

Education Amendments of 1972, U.S.C. § 1681 ("Title IX"), violation of Title VII,

and breach of privacy.  Compl.  On October 18, 2019, the University

Defendants moved with the consent of the plaintiff to extend the time within

which to file a responsive pleading or motion until December 2, 2019.  Doc. 14.

## II. **LEGAL STANDARDS**

### A. **Motion to Dismiss**

A party may assert the defenses of lack of subject-matter jurisdiction and

failure to state a plausible claim upon which relief can be granted by a motion

to dismiss.  *See* .F.R.C.P. 12(b).  It is well settled that "[t]o survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true,

to state a plausible claim to relief that is plausible on its face." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009); *see also* F.R.C.P. 12(b)(6).

Generally, under F.R.C.P. 12(b)(6) the Court's review "is limited to the

facts as asserted within the four corners of the complaint, the documents

attached to the complaint as exhibits, and any documents incorporated in the

complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184,

4

191 (2d Cir. 2007).  However, the Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

**B. Motion to Strike**

On motion by either party, "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter."  F.R.C.P. 12(f).

**C. Motion for More Definite Statement**

A party "may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  F.R.C.P. 12(e).

**III. <u>ARGUMENT</u>**

**A. The Complaint should be dismissed.**

The allegations of the plaintiff's complaint are time-barred, and fail to state a plausible claim under Connecticut common law, Title IX, or Title VII. The Complaint should therefore be dismissed in its entirety.

**1. Count One is time-barred and fails to state a plausible claim of breach of contract for which relief can be granted.**

Contractual claims, including breach, are subject to a six-year statute of limitations under Connecticut law.  C.G.S. § 52-576.  The plaintiff alleges three specifications of breach of contract: "imposition of successive and duplicative punishment"; "unilaterally removing the plaintiff from his endowed chair"; and "removing the plaintiff from his endowed chair without any meaningful opportunity to contest the removal."  Compl. ¶ 12.  In respect of these specifications of breach, the plaintiff alleges that he was suspended in 2013, removed from as Director of the Cardiovascular Research Center, and removed from the Von Zedtwitz Professorship in 2018.  Compl. ¶¶ 21, 23, 39.

Conspicuously, the plaintiff omits the dates of his suspension and removal as the Director of the Cardiovascular Research Center, but he alleges that his removal as Director took place after "a second series of stories in the New York Times."  Compl. ¶ 23.  Those publications disclose that the plaintiff was suspended in January 2013.[1]  The plaintiff filed his complaint in this

---

[1] *See* T. Lewin, *Yale Medical School Removes Doctor After Sexual Harassment Finding*, N.Y. TIMES (Nov. 14, 2014), https://nyti.ms/1BpU9cu; *see also* T. Lewin, *Handling of Sexual Harassment Case Poses Larger Questions at Yale*, N.Y. TIMES (Nov. 1, 2014), https://nyti.ms/1wTfpSG.  The Court may consider these in deciding the motion to dismiss as

action on October 1, 2019, over six years later. Accordingly, to the extent that the plaintiff claims that the University breached a contract by "imposition of successive and duplicative punishment" that included his suspension in January 2013, that claim must be dismissed as time-barred. C.G.S. § 52-576.

In any event, the plaintiff fails to state a plausible claim of breach of contract. "The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." *U.S. Bank Nat'l Ass'n v. Eichten*, 184 Conn. App. 727, 761 (2018) (citations omitted).

The plaintiff fails to allege the formation of an agreement regarding the matter as to which he claims a breach by the University Defendants, nor can he do so. The plaintiff alleges he entered into a contract of employment in 2008 and that contract was amended in 2009. Compl. ¶ 44. Yet, the plaintiff continues to allege that a "*material term* of the contract was the university's and Dr. Simon's being bound and obligated to the rights and duties imposed by the Procedures Governing the University-Wide Committee on Sexual

---

documents incorporated into the complaint by reference, or as documents in the plaintiff's possession and on which the plaintiff relied in bringing suit. *See McCarthy, supra* at 191; *Brass, supra* at 150.

Misconduct." Compl., ¶ 45 (emphasis added).  The plaintiff previously alleged that those Procedures were created *after* 2011.  Compl. ¶¶ 14-15.  If the Procedures were a material term of the contract, and those Procedures were not promulgated until after 2011, there could be no formation of an agreement in 2008 or 2009 as to these terms, and his claimed breach of them necessarily fails as a result.

Further, the plaintiff fails to allege that he performed his obligations under a contract, which is an essential element of the prima facie case and subjects this count to dismissal.  A claim of breach of contract will necessarily fail where a party has "failed to allege full performance."  *See Eichten, supra,* at 761.  Here, the plaintiff does not allege anywhere in the Complaint that he fully performed his obligations under an employment contract.  To the contrary, the plaintiff's other allegations in the Complaint set forth that he *failed* to perform his obligations under an employment contract.

The plaintiff does not attach any contract to his Complaint, but he did attach a letter setting forth the terms and conditions of the University's offer of employment in his prior breach action raising the same allegations in Connecticut Superior Court.  *See Simons, supra,* Compl., Exhibit A.  The first

section of that letter directs the plaintiff to review the Yale University Faculty
Handbook, which includes policies that "represent essential employment
understandings between you and the University" and will "become part of these
understandings." That letter also provides a link to the Handbook, which
states that the University prohibits all forms of sexual misconduct. *See*
Handbook, Art. XXI(A).

As the plaintiff concedes, a lengthy, independent inquiry concluded that
the plaintiff had committed sexual harassment in violation of the University's
sexual misconduct policy. Compl ¶¶ 20-21. The plaintiff therefore not only
fails to allege that he performed; he actually alleges that he *failed* to perform.
In other words, he breached what he alleges was a material term of the
contract prior to any claimed breach by the University Defendants, thereby
relieving them of their obligation to perform. *See Weiss v. Smulders,* 313 Conn.
227, 263 (2014) ("Under contract law, it is well settled that a material breach
by one party discharges the other party's subsequent duty to perform on the
contract.")

The plaintiff's breach of contract claim alleged in Count One relies on an
alleged breach that occurred in 2013 and is therefore time-barred; and he has

failed to allege—because he cannot—the essential elements of formation and performance.  Accordingly, Count One should be dismissed.

### 2. Count Two fails as a matter of law, is time-barred, and fails to state a plausible claim of breach of the implied warranty of fair dealing for which relief can be granted.

As demonstrated in § III(A)(1), *supra,* the plaintiff failed to state a plausible claim of breach of contract for which relief can be granted.  This failure is fatal to his claim of breach of the implied warranty of fair dealing as well: "Connecticut law requires a breach of contract in order to plead bad faith." *Hurlburt v. Massachusetts Homeland Ins.* Co., 310 F. Supp. 3d 333, 345 (D. Conn. 2018) (Bolden, J.), *citing Valls v. Allstate,* 2017 WL 4286301 (D. Conn. Sept. 27, 2017) (Bolden, J.); *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.,* 308 Conn. 760 (2013).  "Because Plaintiffs, as a matter of law, have not plead a plausible claim for breach of contract, their claim for breach of the implied covenant of good faith and fair dealing also fails." *Hurlburt, supra* at 345.

Further, the plaintiff's claims are time-barred.  Contractual claims under Connecticut law, including claims alleging violation of implied contractual duties like the implied warranty of fair dealing, are subject to a six year statute

of limitations.  C.G.S. § 52-576.  The plaintiff alleges as specifications of breach of the implied warranty of fair dealing that he was induced to join the University on the belief that the positions offered could only be taken away in certain circumstances; that his removal from the Von Zedtwitz Professorship did not comply with University policies; and that the "summary manner of providing him notice" was intended to deprive him of a right to contest the decision to remove him from the Von Zedtwitz chair.  Compl., ¶¶ 49, 50, 51. The plaintiff alleges that he entered into an employment agreement for the positions offered in 2008.  Compl. ¶¶ 8, 44.  The plaintiff filed his Complaint on October 1, 2019.  Accordingly, to the extent that the plaintiff claims that the University breached an implied warranty of fair dealing by inducing him in 2008 to join the University on the belief that the positions offered could only be taken away in certain circumstances, that claim is time-barred.  C.G.S. § 52-576.

In any event, the plaintiff fails to state a plausible claim of breach of the implied warranty of fair dealing for which relief can be granted.  In order to survive a motion to dismiss this claim, the plaintiff must allege bad faith, which "means more than mere negligence; it involves a dishonest purpose."

*Calzone v. State Farm Fire & Cas. Co.*, 2017 WL 5013234, at *1 (D. Conn. Nov. 2, 2017) (Shea, J.), *citing Karas v. Liberty Ins. Corp.*, 33 F. Supp. 3d 110 (D. Conn. 2014).  Bad faith includes "both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." *Habetz v. Condon*, 224 Conn. 231, 237 (1992).

The plaintiff has not alleged a "dishonest purpose" or a "sinister motive." The plaintiff does not allege the University had a sinister motive in inducing him to join the University.  Compl. ¶ 49.  He does not allege that his removal from the Von Zedtwitz Professorship was for a "dishonest purpose" or "sinister motive," only that the removal was made "in response to negative publicity." Compl. ¶ 50.  Finally, the plaintiff cannot maintain the allegation that he was removed from the Von Zedtwitz Professorship without a meaningful opportunity to contest the removal, because he alleges elsewhere that he [1] refused a request to resign that Professorship made by defendant Dr. Alpern, the Dean of the Yale University School of Medicine, and [2] sought ex parte injunctive relief

and permanent relief in an action in the Connecticut Superior Court.[2]  Compl.
¶¶ 51, 39.

The plaintiff's claims relating to his employment in 2008 are time-barred,
and he has not pleaded an underlying breach or a sinister motive as required.
The plaintiff's claim of breach of the implied warranty of fair dealing alleged in
Count Two should therefore be dismissed.

### 3. Count Three is time-barred, and fails to state a plausible claim of wrongful discharge for which relief can be granted.

Tort claims arising under Connecticut law are subject to a three year
statute of limitations.  C.G.S. § 52-577.  To the extent that that the plaintiff
seeks with his common-law wrongful discharge claim redress for his
suspension in 2013 for violating the University's sexual misconduct policy, or
any other actions that took place prior to October 1, 2016, the claim is time-
barred.  C.G.S. § 52-577.

In any event—and more fatally—the plaintiff has not alleged *any* of the
elements of a Connecticut common-law wrongful discharge claim; so he has

---

[2] It bears repeating that after his application for injunctive relief was denied and the University
moved to dismiss the action, the plaintiff failed to oppose the motion to dismiss and instead
withdrew the action, which had sought his restoration to the Von Zedtwitz Professorship.
*Simons, supra,* Docs. 101, 107.

failed to state a claim upon which relief can be granted and Count Three therefore must be dismissed.  At the outset, the plaintiff cannot make out a claim of wrongful discharge in violation of public policy because he was not discharged at all.  The common-law wrongful discharge claim is only available "*for the discharge of an at will employee* if the former employee can prove a demonstrably improper reason for *dismissal,* a reason whose impropriety is derived from some important violation of public policy."  *Burnham v. Karl and Gelb P.C.,* 252 Conn. 153, 181 (2000) (citations omitted) (emphasis supplied). By his own allegation, "Dr. Simons remains an employee of the University." Compl. ¶ 42.  His claim for common-law wrongful discharge therefore fails on this basis.

Further, he has failed to allege any other elements of a common-law wrongful discharge claim.  Specifically, he has not alleged that the University's discharge violates public policy; that he is otherwise without a remedy; or that permitting his discharge to go unredressed would leave a valuable social policy unvindicated.  *See Lopez v. Burris Logistics Co.*, 952 F. Supp. 2d 396, 405 (D. Conn. 2013), on reconsideration (Sept. 23, 2013) (Haight, J.), *citing Burnham v. Karl and Gelb P.C.,* 252 Conn. 153 (2000); *Atkins v. Bridgeport Hydraulic Co.,* 5

14

Conn.App. 642 (1985). The plaintiff only alleges in a conclusory manner that "the Defendants engaged in wrongful discharge" by removing him from the Von Zedtwitz Professorship and that he suffered damages. Compl. ¶¶ 54-55. These are no more than conclusions, and they are "not entitled to the assumption of truth" on a motion to dismiss. *See Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir.2010), *quoting Iqbal, supra* at 679.

The plaintiff identified no public policy that the University's conduct violated, and his claim fails for that reason. Further, though, there is no public policy that the plaintiff could identify to plead a claim of wrongful discharge. Where public policies are embodied and protected by statutes—here, Title VII, Title IX, 42. U.S.C. § 1981—a common-law wrongful discharge claim is barred. Compl. ¶ 1; *see e.g. Swihart v. Pactiv Corp.*, 187 F. Supp. 2d 18, 25 (D. Conn. 2002) (Goettel, J.) ("In this case, plaintiff has alleged that she was terminated in retaliation for complaining about discriminatory practices at the plant, which, if true, would violate important public policies embodied in Title VII. As defendant correctly asserts, because plaintiff already has an adequate statutory remedy, this Court will not recognize a separate claim for wrongful discharge in violation of public policy."); *see also Lopez, supra* at 405 (collecting

cases).

The plaintiff's claims relating to his suspension and other actions occurring prior to 2016 are time-barred.  Most critically, however, he has failed to allege that he was discharged; that his discharge violated a public policy; that he has no remedy; or that a public policy is at issue, as required to allege a valid and plausible claim for wrongful discharge under Connecticut law.  The plaintiff's wrongful discharge claim in Count Three should therefore be dismissed for failing to state a claim upon which relief can be granted.

### 4. Count Four is time-barred, and fails to state a plausible claim of negligent infliction of emotional distress for which relief can be granted.

Tort claims arising under Connecticut law are subject to a three year statute of limitations.  C.G.S. § 52-577.  To the extent that that the plaintiff seeks with his negligent infliction of emotional distress claim redress for his suspension in 2013 for violating the University's sexual misconduct policy, or any other actions that took place prior to October 1, 2016, the claim is time-barred.  C.G.S. § 52-577.

The plaintiff's claim of negligent infliction of emotion distress, like his claim for wrongful discharge, fails to state a plausible claim for relief in any

event because it fails to allege that his employment was terminated as required. "[N]egligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process." *Ramsey v. Network Installation Servs., Inc.*, 2008 WL 4447091, at *2 (D. Conn. Sept. 3, 2008) (Hall, J.), quoting *Perodeau v. City of Hartford*, 259 Conn. 729, 750 (Conn.2002).  The plaintiff concedes that the University's alleged conduct took place in the context of his continuing employment, which continues to this day.  *See Ramsey, supra* at *2; Complaint ¶ 42.  Because the plaintiff has not alleged that his employment was terminated, his negligent infliction of emotional distress claim fails to state a plausible claim for which relief can be granted.

Further, the plaintiff has not alleged, as required, that the University's conduct involved an "unreasonable risk of emotional distress that might result in bodily harm." *Perodeau, supra* at 752.  The plaintiff only alleges that the University "acted in such a matter as [to] negligently cause Dr. Simons to suffer emotional distress and humiliation."  Compl. ¶ 57.  Accordingly, Count Four should be dismissed on this additional basis.  *See Ramsey, supra* at *2.

The plaintiff's claims relating to his suspension and other actions

occurring prior to 2016 are time-barred.  Most significantly, however, he has failed to allege either that the University negligently inflicted emotional distress in the context of the termination of his employment, or that the University's conduct involved an unreasonable risk of emotional distress that might result in bodily harm, both of which are required to state a claim for negligent infliction of emotional distress under Connecticut law.  The plaintiff's negligent infliction of emotional distress claim in Count Four should therefore be dismissed.

### 5. Count Five is time-barred, fails to state a plausible claim under Title IX upon which relief can be granted.

The Court applies Connecticut's three-year statute of limitations for actions founded upon a tort to alleged violations of Title IX.  *See Curto v. Edmundson*, 392 F.3d 502, 504 (2d Cir. 2004); C.G.S. § 57-577.  To the extent that the plaintiff seeks redress here for his suspension in 2013 for violating the University's sexual misconduct policy, or any other actions that took place prior to October 1, 2016, the claim is time-barred.  C.G.S. § 52-577.

In any event, to the extent that this Count is understandable, it appears to allege a violation of Title IX based on the allegedly cumulative discipline of

Dr. Simons.  Compl.  ¶ 61.  Title IX actions "attacking a university disciplinary proceeding on grounds of gender bias can be expected to fall generally within two categories":

> In the first category, the claim is that the plaintiff was innocent and wrongly found to have committed an offense.  In the second category, the plaintiff alleges selective enforcement.  Such a claim asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender.

*Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994).

The plaintiff does not allege that the University wrongly found that he committed an offense under the University's sexual misconduct policy.  *See* Compl. ¶ 21.  To the contrary, he acknowledges that the finding was made after a lengthy independent inquiry by Hon. Beverly Hodgson (ret.), the discipline of suspension was imposed, and he thereafter was in good standing with the University.  Compl. ¶¶ 20-21, 25.  He simply alleges that the University, in removing him from the Von Zedtwitz Professorship, was "punishing him twice for the same conduct."  Compl ¶ 61.

Accordingly, the plaintiff's Title IX claim falls under the "selective enforcement" category, and the plaintiff must therefore plausibly allege that,

regardless of his "guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the [plaintiff's] gender." *Yusuf, supra* at 715.  That is, the plaintiff must allege with particularity a causal connection between a procedurally or otherwise flawed proceeding and gender bias.  *Id.*  This requires the plaintiff to allege "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding."  *Id.* "Such allegations might include, inter alia, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender."  *Id.*

The plaintiff does not make any particularized allegations suggesting gender bias.  He does not allege that members of the disciplinary tribunal or University officials made statements that reflected a bias against men.  The only paragraphs concerning statements by University officials allege that the University stated it did not intend to confer an additional honor on the plaintiff when he was transferred from the Berliner Professorship to the Von Zedtwitz Professorship, Compl. ¶ 35, and that Dr. Alpern later stated he "was concerned about public criticism directed at the University's transfer of the plaintiff to the

Waldemar Von Zedtwitz Professorship." Compl. ¶ 37. Neither statement makes a particularized allegation that suggests a gender bias.

In paragraphs 66 and 67 of the Complaint—which paragraphs are not incorporated into Count 5 alleging a violation of Title IX—the plaintiff alleges that the University "never punished a female multiple times for the same conduct in any disciplinary action involving sexual harassment" and that "Upon information and belief, the defendants have subjected only Caucasian males to punishment twice for the same conduct." However, such "wholly conclusory allegations of this nature will not suffice for the purposes of Rule 12(b)(6)." *Yusuf, supra* at 715.

Fatally, the plaintiff does not allege facts suggesting that the University ever received a complaint against a similarly-situated female faculty member comparable to the complaint lodged against the plaintiff, or that the University treated such a female faculty member differently. *See Routh v. Univ. of Rochester*, 981 F. Supp. 2d 184, 211 (W.D.N.Y. 2013) (Siragusa, J.) (dismissing selective enforcement claim for failing to allege more favorable treatment of similarly situated comparator); *Prasad v. Cornell Univ.*, 2016 WL 3212079, at *18 (N.D.N.Y. Feb. 24, 2016) (McAvoy, J.) (same); *Rolph v. Hobart & William*

*Smith Colleges*, 271 F. Supp. 3d 386, 404 (W.D.N.Y. 2017) (Wolford, J.) (same);

*Xiaolu Peter Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 480 (S.D.N.Y. 2015)

(Abrams, J.) (same); *Curto v. Smith*, 248 F. Supp. 2d 132, 147 (N.D.N.Y. 2003)

(same), aff'd in part, appeal dismissed in part sub nom. *Doe v. Anonymous*

*Unnamed Sch. Employees & Officials of Cornell Univ. Coll. of Veterinary Med.*, 87

F. App'x 788 (2d Cir. 2004), and aff'd, 93 F. App'x 332 (2d Cir. 2004).

The plaintiff has accordingly failed to plead a violation of Title IX or the

due process afforded thereunder.  Further, insofar as the plaintiff's allegation

that the University's conduct was a "violation of the due process requirements

of Title IX" is an attempt to raise Constitutional due process claims, those

claims must fail as a matter of law.  Compl. ¶ 61.  Claims alleging a violation of

constitutional equal protection or due process can only be brought against

state actors.  *See Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir.1995) (equal

protection); *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen*

*& Helpers of Am., AFL–CIO*, 954 F.2d 801, 806 (2d Cir.1992) (due process).  The

University is a private university, and the plaintiff does not allege the

University was a state actor.  *See Yu, supra* at 461–63 (as "a private college,

and not a state actor, the federal Constitution does not establish the level of

due process that [the University] had to give [the plaintiff] in his disciplinary proceeding.").

The plaintiff's claims relating to his suspension and other actions occurring prior to 2016 are time-barred; most critically, however, he has failed to make any factual allegations from which a plausible, valid inference of gender bias could be drawn, and his claimed violation of Title IX alleged in Count Five should therefore be dismissed. Any purported claims for violation of constitutional equal protection or due process rights likewise must be dismissed in the absence of any alleged state action as required.

### 6. Count Six is time-barred, and fails to state a plausible claim under Title VII for which relief can be granted.

A party must exhaust his administrative remedies for each discrete act of discrimination or lose the ability to recover for it. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110, 114 (2002). A Title VII suit must be filed within 90 days of receiving the notice of right to sue from the Equal Employment Opportunity Commission. 42 U.S.C. § 2000e-5(f)(1). Applying the foregoing authority to the plaintiff's Title VII claim disposes of it. The plaintiff does not allege that he received a notice of right to sue from the Equal

23

Employment Commission.  Compl. at ¶ 41.  Further, the University has not received service of a notice of right to sue given to the plaintiff.  This alone is fatal to the plaintiff's claims.  *See Morgan, supra* at 110.

The receipt of a release of jurisdiction from the Connecticut Commission on Human Rights and Opportunities is a prerequisite to the filing of a suit alleging violations of the Connecticut Fair Employment Practices Act, not violations of Title VII.  *See* C.G.S. § 46a-101(e).  The plaintiff alleges that he received a release of jurisdiction from the Commission on Human Rights and Opportunities but omits the date on which it was issued.  Compl. ¶ 41.  That release of jurisdiction was issued June 11, 2019.  *See* Exhibit C.[3]  The plaintiff filed this lawsuit on October 1, 2019.  Accordingly, even if a notice of right to sue had been issued by the Equal Employment Opportunity Commission contemporaneously with the release of jurisdiction issued by the Commission on Human Rights and Opportunities on June 11, 2019, the plaintiff's action alleging a Title VII violation was filed 112 days later, on October 1, 2019, instead of within 90 days, by September 9, 2019 as required.  The plaintiff's

---

[3] The Court may consider this document in deciding the motion to dismiss as documents incorporated into the complaint by reference, or as documents in the plaintiff's possession and on which the plaintiff relied in bringing suit.  *See McCarthy, supra* at 191; *Brass, supra* at 150.

action is therefore time-barred and should be dismissed on that basis alone. 42 U.S.C. § 2000e-5(f)(1).

Further, the plaintiff has failed to allege nearly every element of his claim. "[A]bsent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). Here, the plaintiff failed to allege that he is qualified. He alleges his academic credentials, Compl. ¶ 8, but also alleges that he was found to have violated the University's sexual misconduct policy. Compl. ¶ 21. The University prohibits all forms of sexual misconduct by all its employees. *See* § III(A)(1), *supra*. As the plaintiff concedes, a lengthy, independent inquiry concluded that he had committed sexual harassment in violation of the University's sexual misconduct policy. Compl ¶¶ 20-21. The plaintiff's Complaint therefore sets forth allegations establishing that he is *not* a qualified employee.

Moreover, "[a]n adverse employment action is "more disruptive than a

mere inconvenience or an alteration of job responsibilities." *Littlejohn, supra* at n.10 (internal quotation marks and citation omitted).  The plaintiff failed to allege that his removal from the Von Zedtwitz Professorship was a materially adverse change in employment, and this claim fails on that basis as well.  As the plaintiff has alleged, he remains a physician, medical researcher, and faculty member of the Yale School of Medicine and is employed by Yale University.  Compl. ¶¶ 3, 42.

Neither does the plaintiff allege that the University discharged him or otherwise discriminated against him because of his sex.  As the plaintiff alleges, he was removed from the Von Zedtwitz chair "for the express purpose of placating those #MeToo activists and sympathizers in the grip of moral panic and self-righteous indignation."  Compl. ¶ 68.  The plaintiff's allegations are consistent with the findings of the Connecticut Commission on Human Rights and Opportunities, which dismissed the plaintiff's complaint because this removal from the Von Zedtwitz Professorship "was based on the Complainant's previous violation of the Respondent's sexual misconduct policy, not the Complainant's protected classes."  *See* Exhibit B.[4]  Indeed, the Commission

---

[4] *See* note 3, *supra*.

concluded, as should this Court: "As this complaint contains no allegation that the Respondent removed the Complainant from the endowed professorship because of his sex or gender identity, it is not legally sustainable as alleged." Exhibit B.

As demonstrated in § III(A)(6), *supra,* the plaintiff's wholly conclusory allegations that he was treated differently than unidentified women are insufficient to survive a motion to dismiss. "A plaintiff relying on disparate treatment evidence must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Mandell v. Cty. of Suffolk,* 316 F.3d 368, 379 (2d Cir. 2003) (internal quotation marks omitted). The plaintiff does not identify any comparators; or plead facts that the University ever received a complaint against such a female faculty member that was comparable to the complaint lodged against the plaintiff; or allege that the University treated such a female faculty member differently. Accordingly, the Court should refuse to consider these allegations. *Mandell, supra* at 70.

Finally, although the plaintiff never alleges a violation of 28 U.S.C. § 1981 in this Count, which is captioned "Discrimination on Account of Gender," he alleges that § 1981 provides a statutory basis for his Complaint. Compl. ¶

1.  He further alleges in this Count that he "is a Caucasian male" and that the University "has only subjected Caucasian males to punishment twice for the same conduct." Compl. ¶¶ 65, 67.  To the extent that the plaintiff alleges a violation of § 1981, it bears emphasis that he has failed to state a plausible claim under that statute as well, as the foregoing analysis will apply with equal force. *See* Johnson *v. Andy Frain Servs., Inc.*, 638 F. App'x 68, 70 (2d Cir. 2016) (affirming dismissal of Title VII and § 1981 claims for failing to state a plausible claim).

The plaintiff's Title VII claims are time-barred for failing to allege or obtain a release of jurisdiction from the Equal Employment Opportunity Commission.  The plaintiff failed to allege that he was qualified, that he suffered an adverse employment action, or that the adverse employment action was taken because of his sex.  To the extent he is attempting to raise a racial discrimination claim under § 1981, his claim fails for the same reasons.  The plaintiff's Title VII claim in Count Six should accordingly be dismissed.

***7. Count Seven is time-barred, and fails to state a plausible claim for invasion of privacy for which relief can be granted.***

Tort claims arising under Connecticut law are subject to a three year statute of limitations.  C.G.S. § 52-577.  The plaintiff alleges that the discipline imposed on him in 2013 was disclosed to the New York Times in 2013.  Compl ¶¶ 23-24.  To the extent that that the plaintiff seeks with his invasion of privacy claim redress for any publicity of the disciplinary proceedings against him in 2013, or any other actions that took place prior to October 1, 2016, the claim is time-barred.  C.G.S. § 52-577.

In order to plead a claim of invasion of privacy, the plaintiff must allege that the defendant intentionally invaded the privacy of the plaintiff by "(a) unreasonable intrusion upon the seclusion of [the plaintiff]; (b) appropriation of the [plaintiff's] name or likeness; (c) unreasonable publicity given to [the plaintiff's] private life; or (d) publicity that unreasonably placed [the plaintiff] in a false light before the public." *Davidson v. Bridgeport*, 180 Conn. App. 18, 29 (2018).  The plaintiff must also plead that "the intrusion would be highly offensive to a reasonable person." *Id.*  The plaintiff's claims fail at the outset because he never alleged that any of the University Defendants invaded his

29

privacy.  He only alleges "one or unknown persons," "one or more persons unknown sympathetic to the #MeToo movement" and "unknown defendants affiliated with Yale" did so.  Compl. ¶¶ 23, 27, 70.  The plaintiff has never alleged that the University Defendants invaded his privacy.  That is insufficient and fatal to his claim here.  *See Davidson, supra* at 30.

Further, the fact that the circumstances of the plaintiff's disciplinary proceedings were published in 2013 requires dismissal of any subsequent claims arising after October 1, 2016.  Because the circumstances of the plaintiff's discipline were published in 2013, the alleged re-circulation of that information five years later in 2018 by "one or more persons unknown" is necessarily not an *unreasonable* intrusion into the plaintiff's seclusion.  Compl. ¶ 27.  By the plaintiff's own allegation, his disciplinary proceedings had been the subject of national news five years previously.  Compl. ¶¶ 23-24.  The plaintiff had no plausible privacy interest to be intruded upon in this regard, much less privacy that was intruded upon unreasonably.

The plaintiff has also failed to allege that unreasonable publicity was given to his life.  As discussed above, by his own admission, the plaintiff's conduct was previously the subject of national news.  Compl. ¶ 26.  Equally,

the plaintiff failed to allege that the publicity unreasonably placed him in a false light.  He expressly alleged that the complaint against him was substantiated after an independent inquiry, Compl. ¶ 21, and does not allege that the publication of the circumstances of that inquiry and subsequent discipline in 2013 and re-circulation of that information in 2018 mischaracterized the circumstances of his inquiry or discipline.  Compl. ¶¶ 23, 27.

Finally, the plaintiff has not alleged that there was an intrusion that would be highly offensive to a reasonable person.  Not only does the plaintiff fail to include any allegations in this regard, the plaintiff himself made these and many more other private facts public on September 21, 2018 when he filed his Superior Court action.  *See Simons, supra,* Complaint.

The plaintiff's claims relating to the publicity of his discipline and other actions occurring prior to 2016 are time-barred, and for that reason his claims relating to the later re-circulation of that prior publicity necessarily fail.  The plaintiff further failed to allege that unreasonable publicity was given to his life, or that the publicity placed him in a false light.  The plaintiff's invasion of privacy claim in Count Seven should therefore be dismissed.

### 8. *The plaintiff has failed to allege diversity jurisdiction over the plaintiff's claims arising under Connecticut Law.*

Count One, alleging breach of contract, Count Two, alleging breach of the implied warranty of fair dealing, Count Three, alleging wrongful discharge, Count Four, alleging negligent infliction of emotional distress, and Count Seven, alleging invasion of privacy, all arise under Connecticut law.  The plaintiff has alleged that the Court's exercise of jurisdiction over these claims is proper under 28 U.S.C. § 1332.  Compl. ¶ 2.  As relevant here, that provision grants the Court original jurisdiction over civil actions between citizens of different states.  28 U.S.C. § 1332(a).  "In order for a case to fall under the federal diversity statute, the plaintiff must prove diversity of the parties, and an amount in controversy that appears, to a "reasonable probability," to be in excess of the statutory jurisdictional amount of $75,000."  *Fernicola v. Toyota Motor Corp.*, 313 F. App'x 408, 408 (2d Cir. 2009), quoting *Scherer v. Equitable Life Assurance Soc'y*, 347 F.3d 394, 397 (2d Cir. 2003).  The plaintiff's jurisdictional allegations do not meet either of these requirements and the Court is therefore without jurisdiction over the plaintiff's claims arising under Connecticut law.

The plaintiff alleges that he is a resident of Connecticut[5], the University is organized in Connecticut, that Peter Salovey serves as its President, and that Dr. Robert Alpern serves as its Dean of the School of Medicine.  Compl.  ¶¶ 3-6. Accordingly, the plaintiff has not alleged diversity of citizenship.  In fact, the plaintiff has alleged that there is no diversity of citizenship between the parties, and the Court therefore does not have original jurisdiction over the plaintiff's claims arising under Connecticut law.  *See Fernicola, supra* at 408.

Further, while the plaintiff alleges that he suffered damages in the form of lost wages, grant opportunities, and other ascertainable economic loss, Compl. ¶¶ 47, 52, 55, 63, none of his allegations disclose the magnitude of those damages.  Indeed, the plaintiff included no demand in his Complaint. *See* Civil Cover Sheet, Compl. at 1.  Simply, it is not apparent to a "reasonable probability" that the plaintiff's damages exceed the amount in controversy requirement, and for that reason the Court does not have original jurisdiction over the plaintiff's claims arising under Connecticut law.

---

[5] "Although it is well-established that allegations of residency alone cannot establish citizenship, Plaintiff's Complaint merely alleges that he *resides* in" Connecticut.  *Kozak v. Pac. Summa Envtl. Corp.*, 2008 WL 268325, at *2 (E.D.N.Y. Jan. 30, 2008) (Hurley, J.).  "The Complaint therefore fails to allege diversity jurisdiction." *Id.*

While "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts," a proposed amendment is futile if the proposed claim could not withstand a Rule 12(b)(6) motion to dismiss. 28 U.S.C. § 1653; *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). Because the plaintiff's Connecticut law claims cannot withstand a Rule 12(b)(6) motion, as set forth in §§ III(A)(1)-(7), *supra*, and the plaintiff has not requested leave to amend, the Court should not permit amendment to remedy the plaintiff's defective jurisdictional allegations.

The plaintiff has not alleged diversity of citizenship of the parties, and has not alleged an amount in controversy.  There is no basis to permit amendment where it would be futile as subject to dismissal.  Accordingly, the plaintiff's claims arising under Connecticut law, Counts One, Two, Three, Four, and Seven, should be dismissed.

### 9. The Court should decline to exercise supplemental jurisdiction over the plaintiff's claims arising under Connecticut Law.

As set forth in § III(A)(9), *supra*, the plaintiff has failed to allege a jurisdictional basis for Counts One, Two, Three, Four and Seven, arising under Connecticut law.  Although the plaintiff failed to allege it as a jurisdictional

34

basis, 28 U.S.C. § 1367 provides that where the Court has original jurisdiction, it shall have supplemental jurisdiction over all claims that "are so related that they form part of the same case or controversy under Article III of the United States Constitution." The plaintiff is not entitled to amend his complaint to allege this jurisdictional basis, because such an amendment would be futile where Counts One, Two, Three, Four and Seven are subject to dismissal under F.R.C.P. 12(b)(6). *See Lucente, supra,* at 258.

However, even if the plaintiff were permitted to do so, the Court should decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c). As relevant here, that provision permits the Court to decline the exercise of supplemental jurisdiction where "the district court has dismissed all claims over which it has original jurisdiction." As set forth in § III(A)(5)-(6), the only two claims the plaintiff has brought under the laws of the United States— Count Five alleging a violation of Title IX, and Count Six alleging a violation of Title VII—are subject to dismissal. "It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." *Klein & Co. Futures v. Bd. of Trade of City of New York,* 464 F.3d 255,

262 (2d Cir. 2006).

The plaintiff has not alleged supplemental jurisdiction.  There is no basis to permit amendment where it would be futile as subject to dismissal. Accordingly, the Court should decline to exercise supplemental jurisdiction over the plaintiff's claims arising under Connecticut law, Counts One, Two, Three, Four and Seven.

**B. The Complaint's allegations regarding "unknown persons" should be stricken.**

"As a general rule, the use of *John Doe* to identify a defendant is not favored."  *In re Murphy*, 482 F. App'x 624, 627 (2d Cir. 2012) (citation and alteration omitted, emphasis supplied).  Here, the plaintiff has alleged that that "one or unknown persons," "one or more persons unknown sympathetic to the #MeToo movement" and "unknown defendants affiliated with Yale" invaded his privacy.  Compl. ¶¶ 23, 27, 70.  The plaintiff's allegations do not fall into the limited exception, "in which the identity of alleged defendants may not be known prior to the filing of a complaint."  *Murphy, supra* at 627 (citation omitted).  This exception is limited to circumstances where the plaintiff has not been given "an opportunity through discovery to identify the unknown

defendants." *Id.* (citation and internal quotation marks omitted).  Here, as in *Murphy, supra,* the plaintiff "had ample opportunity" to discover the identity of the unknown persons.  Specifically, the plaintiff initiated an action in Connecticut Superior Court on September 21, 2018, seeking an injunction against his removal from the Von Zedtwitz Professorship and alleging breach of contract.  *See Simons, supra*, Complaint.  The plaintiff had ample opportunity to serve discovery requests[6], but instead served none, failed to oppose the University's motion to dismiss, and, on the eve of argument, withdrew the action.  *See Simons, supra*, Doc. 107.  Accordingly, the plaintiff's allegations concerning "unknown persons" in paragraphs 23, 27 and 70 of the complaint should be stricken as "impertinent matters."  F.R.C.P. 12(e).

**C. The Complaint's allegations regarding "unknown persons" require a more definite statement.**

In the alternative, the plaintiff's allegations regarding "unknown persons" are "so vague or ambiguous that the party cannot reasonably prepare a response," and therefore require a more definite statement.  F.R.C.P. 12(f).  As discussed in § III(A)(7), *supra,* the "unknown persons" allegations, which form

---

[6] Pursuant to Practice Book § 13-6(a) and 13-9(c), the plaintiff was permitted to serve interrogatories and requests for production on any date after the return date, October 16, 2018. *See Simons, supra,* Complaint.

37

the basis of Count Seven alleging invasion of privacy, are so vague and ambiguous that they fail to allege which person or persons invaded the plaintiff's privacy and are therefore subject to dismissal. "[I]f the pleading is impermissibly vague, the court may act under Rule 12(b)(6) or Rule 12(e), whichever is appropriate, without regard to how the motion is denominated." *Ramey v. Morgan*, 2017 WL 5171846, at *2 (D. Conn. Nov. 7, 2017) (Meyer, J.), quoting 5C Charles Alan Wright & Arthur Miller, Federal Practice & Procedure § 1376 (3d ed. 2004). The plaintiff's allegations regarding "unknown persons" are so vague and ambiguous that the University Defendants cannot prepare a response. Accordingly, the allegations regarding "unknown persons" in paragraphs 23, 27, and 70 require a more definite statement.

## IV. CONCLUSION

The plaintiff's Complaint should be dismissed in its entirety because each of its seven counts is time-barred and fails to state a plausible, valid claim upon which relief can be granted. The plaintiff's has failed to allege that his discipline by the University in 2013 or his removal from the Von Zedtwitz Professorship in 2018 are actionable as a breach of contract, the very claim he voluntarily withdrew in the Connecticut Superior Court. *See Simons, supra,*

Doc. 107.  Further, the plaintiff has failed to allege that his discipline or removal from the Von Zedtwitz Professorship is actionable as a breach of the implied warranty of fair dealing, wrongful discharge, negligent infliction of emotional distress, violations of Title IX or Title VII, or as an invasion of privacy.  The plaintiff has failed to allege diversity jurisdiction with respect to his claims arising under Connecticut law, and the Court should decline to exercise supplemental jurisdiction over those claims.  The complaint's allegations concerning "unknown persons" should be stricken as impertinent, or, in the alternative, require a more definite statement in view of their vagueness and ambiguity.

THE UNIVERSITY DEFENDANTS

BY: _____
KEVIN C. SHEA (CT04261)
BENJAMIN LEVITES (CT30481)
CLENDENEN & SHEA, LLC
400 Orange Street
New Haven, CT  06511
Telephone:  203-787-1183
Fax: 203-787-2847
kcs@clenlaw.com
bhl@clenlaw.com

39

CERTIFICATION:

    This is to certify that a copy of the foregoing has been sent to all required notification parties either via operation of the Court's electronic notification system or by first-class mail, postage pre-paid to anyone unable to accept such notification on November 27, 2019.

_____

CLENDENEN & SHEA, LLC