UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MICHAEL SIMONS | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:19-CV-01547(VAB) |
| | : | |
| v. | : | |
| | : | |
| YALE UNIVERSITY, | : | |
| PETER SALOVEY, | : | |
| ROBERT ALPERN, M.D., | : | |
| UNKNOWN PERSONS | : | |
| Defendant. | : | January 16, 2020 |

### REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE AND FOR MORE DEFINITE STATEMENT

A crusade is not a cause of action. In his zeal to oppose the "#MeToo lynch mob"[1], the plaintiff has failed to address the fatal deficiencies in his Complaint that are dispositive of its seven Counts. Further, he has failed to show why his claims against "unknown persons" should not be stricken or require a more definite statement. Yale University ("University"), Peter Salovey, and Robert Alpern, M.D. ( "University Defendants") hereby reply briefly to the plaintiff's Opposition to Motion to Dismiss and Motion to Strike and for More Definite Statement. Doc. 21 ("Opp.").

### I. ARGUMENT

**A. Count One should be dismissed because the plaintiff failed to allege performance.**

The plaintiff, who was found to have violated the University's sexual misconduct policy by committing sexual harassment, cannot plausibly argue that he performed the terms of his contract with the University, as he must to survive dismissal. *See U.S. Bank Nat'l Ass'n v. Eichten*, 184 Conn. App. 727, 761 (2018). He concedes that the University Faculty Handbook ("Handbook") "outlines material terms of [his] agreement," that it bars sexual misconduct, and

---

[1] The plaintiff refers ten times to the "#MeToo lynch mob," adding the even more gratuitous hyperbole that it "came calling for Dr. Simons' head on a spike." Opp. at 13, 22, 23, 25, 27, 28.

**ORAL ARGUMENT REQUESTED**

that he was found to have committed sexual misconduct. Opp. at 7. He claims that he did perform under the contract because [1] his termination was not recommended, [2] the recommended discipline was reduced, [3] he did not resign from Yale-New Haven Hospital and was not removed as Director of the Cardiovascular Research Center until later, and [4] he kept his professorship throughout his suspension and "did not commit any further instances of sexual harassment." Opp. at 7-8. What the plaintiff does not and cannot argue is that he complied with the Handbook and its prohibition of sexual misconduct, conceding that he failed to perform a material term of the contract. *See Eichten, supra* at 761. Indeed, the plaintiff's sexual misconduct constitutes a breach of this material term, relieving the University Defendants of their obligation to perform. *See Weiss v. Smulders*, 313 Conn. 227, 263 (2014).

Even if the University Defendants were not relieved of their obligation to perform, the plaintiff cannot maintain the specifications of alleged breach as he argues in his Opposition. Opp. at 9, *citing* Compl. ¶ 46. The plaintiff identifies no contract term that he alleges was breached by the University Defendants. The contract did not provide for his appointment to the Von Zedtwitz Professorship, or for his appointment to the Berliner Professorship. The contract only provides: "The Department and the Dean will nominate you to President Levin and the Yale Corporation for a Robert Berliner Professorship." Doc. 21-1 at 1, ¶ 2. The plaintiff admits, as he must, that he was nominated to and received the Berliner Professorship. Compl. ¶ 9. Thus, he has failed to allege breach as required. *See Eichten, supra* at 761. The fact that the plaintiff did not sexually harass any other junior colleagues is not enough to survive dismissal of Count One for failing to allege performance. *See id.* Even if the plaintiff had alleged performance, he cannot identify any term of the Contract that was breached. Count One should be dismissed.

**B. Count Two should be dismissed because the plaintiff failed to allege breach, injury of his right to receive benefits reasonably expected under the contract, and bad faith.**

2

The plaintiff failed to allege breach of contract, and now cannot claim breach of the implied covenant of that contract. *See Hurlburt v. Massachusetts Homeland Ins. Co.*, 310 F. Supp. 3d 333, 345 (D.Conn 2018) (Bolden, J.) (citations omitted). Further, the one contract term the plaintiff cites shows that the University Defendants did not injure any right to benefits that he reasonably expected to receive. *See Geysen v. Securitas Sec. Servs. USA, Inc.*, 322 Conn. 385, 399 (2016) (citation omitted). The plaintiff argues the University led him to believe, "by the language of its offer, that appointment and removal from endowed professorships could only be accomplished by following the proper procedures and process at Yale University." Opp. at 11, *citing* Doc. 21-1 at 1, ¶ 2; *see also* Compl. ¶ 49. The offer language cited by the plaintiff, however, only states he would be *nominated* to the Berliner Professorship. Doc. 21-1 at 1, ¶ 2. The plaintiff's only reasonably expected benefit was nomination to the Berliner Professorship, which he concedes he received. Compl. ¶ 9.

Indeed, in breach of implied covenant claims, "what is in dispute is a party's discretionary application or interpretation of a contract term." *Geysen, supra* at 399 (citation omitted). The plaintiff has not identified contract or Handbook terms concerning procedures for removal from endowed professorships, because the contract and Handbook are silent in this respect. Having failed to identify such terms, the plaintiff cannot claim that they were misapplied or misinterpreted. Yet, the Handbook is *not* silent on "Review Procedures for Complaints about Issues Other than Reappointment or Promotion." *See* Doc. 21-2 at 34. These provide that faculty members who believe they have suffered because of a breach of University policy must seek review by the Faculty Review Committee. University faculty members must exhaust the review procedures set forth in the Handbook before bringing a lawsuit. *See Neiman v. Yale Univ.*, 270 Conn. 244 (2004). Here, the plaintiff has not alleged that he exhausted, and his Complaint is

3

therefore subject to dismissal on this basis as well.

Finally, "[a]bsent allegations and evidence of a dishonest purpose or sinister motive, a claim for breach of the implied covenant of good faith and fair dealing is legally insufficient." *Alexandru v. Strong*, 81 Conn. App. 68, 81 (2004). The plaintiff has not alleged that the University acted for a dishonest or sinister purpose, merely one that he finds "self-righteous" and "ill-informed." Opp. at 11. Again, a crusade is not a claim: this absence is fatal to Count Two.

## C. Counts Three and Four should be dismissed because the plaintiff failed to allege that his employment was terminated.

The plaintiff concedes that his failure to allege that his employment was terminated is dispositive of Counts Three and Four. Opp. at 12, 17. However, he attempts to escape this failure by claiming, without authority, that he entered into "three separate and distinct categories" of "employment relationships" with the University Defendants, who "wrongfully and completely discharged [him] from at least one of those relationships." Opp. at 15, 17. The plaintiff acknowledges that no Connecticut court has recognized this line of argument, and he identifies no other court that has. Opp. at 15, 17. In any event, the plaintiff attempts to conflate titles associated with his faculty appointment to the University School of Medicine into separate and distinct positions, which is belied by the contract. The first sentence of the contract states: "We are delighted to offer you [1] the position of Chief of the Section of Cardiovascular Medicine and Professor of Internal Medicine at Yale University School of Medicine and [2] the corresponding position of Chief of Cardiovascular Medicine at Yale-New Haven Hospital." Doc. 21-1 at 2. As to the latter position, the plaintiff alleges he resigned it, Compl. at ¶ 23, Yale-New Haven Hospital is not a defendant, and he is time-barred from seeking relief for his resignation in 2014. C.G.S. § 52-577.

As to the former position, pursuant to his faculty appointment, the Yale University

4

School of Medicine further [1] agreed to nominate him for the Berliner Professorship, Doc. 21-1 at 2, § A(1), and [2] committed to name him the first Director of the Cardiovascular Research Center, Doc. 21-1 at 4, § C(1)(a). The titles of Berliner Professor and Director of the Cardiovascular Research Center were not, by the express terms of the plaintiff's contract, "separate, distinct employment relationships," but were part and parcel of the plaintiff's initial faculty appointment as set forth in the contract. *See* Opp. at 15. The plaintiff has not alleged that his employment was terminated. Connecticut law does not recognize a cause of action for wrongful demotion. *Jones v. H.N.S. Mgmt. Co.*, 2003 WL 22332837, at *2 (Conn. Super. Ct. Sept. 25, 2003) (Licari, J.) (collecting cases). As he has conceded, this is fatal to his claims in Counts Three and Four, and they should be dismissed.

**D. Count Three should also be dismissed because statutory remedies exist.**

The plaintiff concedes that he has statutory remedies under Title VII[2] and Title IX[3] for the same public policy violations that he alleges in Count Three. Opp. at 12. He concedes that those remedies bar him from recovering on this Count. Opp. at 12. He identifies no other public policy he claims was violated. Without authority, he "rejects" that his pleading Title VII and IX claims precludes this wrongful discharge claim. Opp. at 12. Yet Connecticut law, applied by this Court, is clear: "The existence of this statutory remedy precludes the plaintiff from bringing a common-law wrongful discharge action." *Burnham v. Karl & Gelb, P.C.*, 252 Conn. 153, 162 (2000).[4] The plaintiff's request that the Court "construe his complaint to plead wrongful discharge in the alternative to both Title VII or Title IX" is improper as a matter of law.[5]

---

[2] Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII").
[3] Title IX of the Education Amendments of 1972, U.S.C. § 1681 ("Title IX").
[4] *See Swihart v. Pactiv Corp.*, 187 F. Supp. 2d 18, 25 (D. Conn. 2002) (Goettel, J.) (Title VII preclusion); *Armstead v. Stop & Shop Companies, Inc.*, 2003 WL 1343245, at *3 (D. Conn. Mar. 17, 2003) (Arterton, J.) (ADA, CFEPA); *Blantin v. Paragon Decision Res., Inc.*, 2004 WL 1964508, at *1 (D. Conn. Aug. 31, 2004) (Droney, J.) (Title VII); *Alterio v. Almost Family, Inc.*, 2019 WL 7037789, at *9 (D. Conn. Dec. 20, 2019) (Bolden, J.) (C.G.S. § 34-51q).
[5] *See* note 4, *supra*.

5

Further, in arguing he could not determine "whether either his Title VII or Title IX claims will be triable claims," Opp. at 12, the plaintiff misapprehends the preclusive effect of statutory remedies. "The statutory remedy bars the wrongful termination action whether or not a plaintiff has taken advantage of the existing statutory remedy." *Armstead, supra* at *3 (dismissing wrongful discharge where statutory remedy unavailable due to untimely filings). If the plaintiff's Title VII or Title IX claims are not "triable" because they are time-barred, or because he failed to make factual allegations from which a inference of gender bias could be drawn, his wrongful discharge claim remains precluded by the existence of those statutory remedies. Indeed, the Connecticut Fair Employment Practices Act, which embodies the same public policy against gender discrimination as do Titles VII and IX, also precludes the plaintiff's claim, though he forfeited that cause of action when he "did not pursue a claim under state law in a timely fashion." Opp. at 23-24; *see Armstead, supra* at *3. The plaintiff concedes that statutory remedies existed for his alleged wrongful discharge and identifies no other public policies that were violated by his alleged discharge. Accordingly, Count Three should be dismissed.

### E. Count Four should also be dismissed because the plaintiff failed to allege risk of bodily harm.

The plaintiff cannot identify an allegation in his Complaint that even implies that the University Defendants' conduct posed an unreasonable risk of emotional distress that might result in bodily harm, as required. *See Perodeau v. City of Hartford*, 259 Conn. 729, 750 (2002). Instead, he only argues that his lawsuit is similar to *Noonan v. Miller Mem'l Cmty. Home, Inc.*, 50 Conn. Supp. 367, 369 (Super. Ct. 2007) (Holzberg, J.) and *Laros v. Int'l Insights, Inc.*, 51 Conn. L. Rptr. 610, 613 (Super. Ct. 2011) (Adams, J.). Opp. at 17-18. Neither case is apposite, and the plaintiff's failure to allege a risk of bodily harm is fatal to Count Three.

*First*, he claims he is analogous to the plaintiff in *Noonan* because he was given an

ultimatum in an "aggravating context." Opp. at 18. In *Noonan*, however, the defendant employer demanded the plaintiff's resignation after it: hired employees with the intention of replacing the plaintiff; demoted the plaintiff; conducted a "secret investigation" of the plaintiff; severely reprimanded plaintiff; deprived plaintiff of her licensure as a nursing home administrator; and performed an "unnecessary and intrusive" search of the plaintiff's office. *Noonan, supra* at 369. The plaintiff has made no such allegations here and is not analogous to Sister Ann Noonan.

*Second*, he claims he is analogous to the plaintiff in *Laros* because he alleges he relied on the University Defendants' promise of the Von Zedtwitz Professorship for the Robert Berliner Professorship, and then had to choose between relinquishing his Professorship or being terminated. Opp. at 18. In *Laros*, however, the defendant employer had negotiated for the plaintiff to move from Connecticut to Chicago, and on the date the move called to terminate her employment effective immediately. *Laros, supra* at \*1. "The movers were then present at the plaintiff's home, loading her belongings." *Id.* The plaintiff here has made no analogous allegations. Indeed, in *Laros*, unlike here, the plaintiff expressly alleged, "she suffered severe emotional distress as a result of her termination." *Id.* The plaintiff has not similarly alleged facts supporting bodily harm, so Count Four should be dismissed.

**F. Counts Five and Six should be dismissed because the plaintiff has not alleged facts that plausibly support the inference that his discipline was motivated by gender bias.**

Dr. Simons concedes that his Complaint purportedly alleges a "selective enforcement" claim against the University Defendants under Title IX, and that he must allege with particularity a causal connection between a procedurally or otherwise flawed disciplinary proceeding and gender bias. Opp. at 20. He also concedes that to prevail on his Title VII claim, he must allege facts that plausibly support that the University was motivated by gender bias to discipline him. Opp. at 26. In support of his claim that he has satisfied these requirements, however, he

7

analogizes extensively to an inapposite case that is materially dissimilar from his own, *Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016). Opp. at 25-26, 28.

The plaintiff here insists that, because he has alleged [1] criticism of Yale University for the plaintiff's transfer to the Von Zedtwitz Professorship and [2] the University's removal of the Von Zedtwitz Professorship was in response to this criticism, he has alleged sufficient facts to support a plausible inference of sex discrimination under *Doe*. Opp. at 21-22, citing Compl. ¶¶ 27, 32-36. Unlike the plaintiff in *Doe*, the plaintiff here has not made *any* allegations regarding any alleged impropriety in the investigation or adjudication of his sexual misconduct. He has not alleged that the University refused to interview relevant witnesses, refused to allow him to submit a response to the complaint, or intentionally accepted unsupported accusations in reaching an incorrect outcome. *See Doe, supra* at 56-57.[6] The plaintiff's allegations here fall far short of those of the plaintiff in *Doe*.

Further, the plaintiff's argument regarding the alleged disparate impact of the University's sexual misconduct policies fail as a matter of law. The plaintiff's authority, *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998), held that to plead disparate impact, allegations that there is a bottom-line "imbalance in the work force are insufficient." That is, the plaintiff's allegation that male faculty members are overrepresented as respondents in University disciplinary proceedings "might result from any number of factors." *Id.* Accordingly, the law "places an initial burden on the plaintiff to show that the specific factor challenged under the disparate impact model results in the discriminatory impact." *Id.* The plaintiff has not connected the University's sexual misconduct policies to a discriminatory impact. Finally, the plaintiff failed to allege any female comparators, that the University has received complaints against such comparators, or that the University treated such comparators differently than the plaintiff. *See*

---

[6] *See also Menaker v. Hofstra Univ.*, 935 F.3d 20, 33 (2d Cir. 2019).

8

*Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003). He claims that his failure to allege so was due to his "limited knowledge." Opp. at 28. However, the plaintiff alleges there was extensive publicity and criticism of the University's handling of *other* cases involving allegations of sexual misconduct. Compl. ¶ 17. The plaintiff has failed to allege facts that plausibly support the inference that his discipline was motivated by gender bias, and Counts Five and Six should be dismissed accordingly.

**G. Count Seven should be dismissed because his discipline was of public record.**

The plaintiff argues that, despite the prior publication of his discipline, the republication of his discipline was not of public interest. Opp. at 31. He further claims "sufficient time had elapsed" so that the republication "constitutes a fresh invasion." Opp. at 21. However, the plaintiff's own authority vitiates these arguments. Opp. at 30, *citing* Restatement (Second) of Torts § 652D (1977) ("Restatement"). *First*, public interest embraces "involuntary public figures" who have "through their conduct or otherwise become a legitimate subject of public interest." Restatement § 652D cmt. f. Here, the plaintiff had become "news" again due to his transfer to the Von Zedtwitz Professorship. The public was reasonably expected to and did have a legitimate interest in the publication of facts of his discipline. *See* Restatement § 652D cmt. J. Indeed, the gravamen of the plaintiff's entire Complaint is that the University was unduly influenced by the public interest in him.

*Second*, a lapse of time, "even of considerable length, since the event that has made the plaintiff a public figure, does not of itself defeat the authority to give him publicity or to renew publicity when it has formerly been given." Restatement § 652D. As an example of such a republication, the Restatement cites a convicted thief who "has changed his name, concealed his identity and for twenty years has led an obscure, respectable and useful life in another city far

removed." The republication of the thief's history, revealing his new identity and after which his "life and career are ruined," "may be but is not definitely an invasion of privacy." *Id.* at Ill. 26. The plaintiff here did not move to another town after his initial discipline, assume a new identity, and live in obscurity for twenty years. Although even those facts may not rise to the level of an invasion of privacy, his definitely do not: he has remained employed in good standing at Yale University. Compl. ¶ 42. Count Seven should therefore be dismissed.

### H. The references to "unknown persons" should be stricken or require a more definite statement because the plaintiff had ample opportunity to conduct discovery.

The plaintiff does not come within the limited exception for "unknown defendants" of *In re Murphy*, 482 F.App'x 623, 627 (2d Cir. 2012), which the University Defendants quoted in full. *See* Opp. at 32; *compare* Doc. 17 at 36-37. The plaintiff insists that, although he filed a prior breach of contract action against the University seeking reinstatement to the Von Zedtwitz Professorship, and voluntarily withdrew that action without pursuing discovery, he did not have an "opportunity through discovery to identify the unknown defendants." Opp. at 33. The sole basis for his argument is that the prior action sought injunctive relief. *Id.* However, that action could have been amended to include demands for legal and equitable remedies. P.B. §§ 10-21, 10-60. The plaintiff could have pursued discovery on the breach irrespective of amendment, or he could have filed a separate bill of discovery in advance of this lawsuit. C.G.S. § 52-156a(a). However, he chose to "evaluate his options" instead. Opp. at 33. He had an opportunity to pursue discovery, and does not come within the exception of *Murphy*. The references to "unknown defendants" in his complaint should be stricken or require a more definite statement.

## II. CONCLUSION

As set forth above and in the moving papers, the University Defendants' Motion to Dismiss and Motion to Strike and for More Definite Statement should be granted.

THE UNIVERSITY DEFENDANTS

BY: _____
KEVIN C. SHEA (CT04261)
BENJAMIN LEVITES (CT30481)
CLENDENEN & SHEA, LLC
400 Orange Street
New Haven, CT 06511
Telephone: 203-787-1183
Fax: 203-787-2847
kcs@clenlaw.com
bhl@clenlaw.com

CERTIFICATION:

This is to certify that a copy of the foregoing has been sent to all required notification parties either via operation of the Court's electronic notification system or by first-class mail, postage pre-paid to anyone unable to accept such notification on January 16, 2020.

_____
CLENDENEN & SHEA, LLC

11