## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MICHAEL SIMONS,     :
   Plaintiff,     :    3:19-CV-01547 (VAB)
            :
v.           :
            :
YALE UNIVERSITY,     :
PETER SALOVEY,     :
ROBERT ALPERN, M.D.,    :
UNKNOWN PERSONS,    :
   Defendants.     :    SEPTEMBER 4, 2020

### SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS & MOTION TO STRIKE & FOR A MORE DEFINITE STATEMENT

Pursuant to the Court's minute order at Dkt. 37, the Plaintiff, Dr. Michael Simons, files this supplemental memorandum in response to the Defendants' supplemental memorandum of law in support of their motion to dismiss and motion to strike and for a more definite statement. Dkt. 38.  The Court should reject the Defendants' additional arguments for the reasons stated herein.

The Defendants rely on two decisions from Judge Dooley of this Court to argue that (1) Title VII forecloses any alternative avenue of relief for employment discrimination; (3) Title IX does not create protections against sex discrimination in employment practices independent of Title VII; and (3) Title IX does not create a private cause of action for employment discrimination.

Dr. Simons first argues herein that the Defendants have waived their arguments by not raising them in their initial motion to dismiss. In the alternative, Dr. Simons argues herein that the Supreme Court has recognized that (1) Title VII is not an exclusive remedy; (2) Title IX provides protections against sex discrimination in employment practices that are independent of Title VII; and (3) Title IX creates a private cause of action for employment discrimination.

## ARGUMENT

I.    **The Defendants Have Waived Their Argument By Failing To Raise It In Their Initial Motion To Dismiss And By Waiting Seven Months After Their Initial Motion To Dismiss Was Fully Briefed To Raise It.**

The Defendants' Motion to Dismiss and Motion To Strike and For A More Definite Statement (Dkt. 16) were fully briefed and filed on January 16, 2020. Dkt. 24. In their initial motion to dismiss and memorandums of law, the Defendants did not challenge whether Title IX enables Dr. Simons to state a cause of action for employment-related discrimination. *See* Dkt. 16, 17, 24. More than seven months after their motion to dismiss was fully briefed, they argue, for the first time, that Title IX does not allow Dr. Simons to state a cause of action for employment-related discrimination despite implicitly conceding that it did during the briefing of their motion. Consequently, the Defendants have waived their right to raise this argument, and the Court should not consider it.

It is well-established that "[a]rguments may not be made for the first time in a reply brief." *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993). "It goes without saying that a reply brief should respond only to issues and arguments raised in the opposition brief." *Burns v. Dept. of Public Safety*, 973 F.Supp.2d 141, 157 (D. Conn. 2013) (quoting *U.S. ex rel. Smith v. Yale-New Haven Hosp., Inc.*, 411 F.Supp.2d 64, 74 (D. Conn. 2005)); *see also Gorss Motels Inc. v. Sprint Communications Co., L.P.*, 2020 WL 1303175, at *1 (D. Conn. Mar. 19, 2020).

In the instant matter, the Defendants have relied on Local Rule 7(d) – the local rule governing reply briefs – to file their supplemental memorandum of law. Dkt. 36. The text of Local Rule 7(d) indicates that reply briefs are limited to the issues raised in the initial memorandums, and the Court has repeatedly held on multiple occasions that new issues

may not be raised in reply briefs. The Defendants, however, have raised an issue – and an issue of first impression which would be of first impression to the Second Circuit and the United States Supreme Court[1] – that they did not raise in their initial briefs and one that Dr. Simons certainly did not raise in his brief. Not only is it improper to consider the arguments because the Defendants have waived them, but it is also highly prejudicial to Dr. Simons to introduce an issue of first impression upon which there is substantial disagreement by way of non-binding authority in a context where his opportunity to brief and argue it is limited to ten pages. Consequently, the Court should reject the arguments raised by the Defendants' supplemental memorandum in their entirety because they have waived them by not raising them initially and the context in which they have raised them is highly prejudicial to Dr. Simons.

## II.   United States Supreme Court Precedent Allows Title IX Claims That Overlap With Title VII Claims.

If the Court does not reject the Defendants' arguments as being waived, it should still reject them as being inconsistent with Title IX and United States Supreme Court precedent. The Defendants rely on Judge Dooley's recent decisions in *Othon v. Wesleyan Univ.*, 2020 WL 1492864, at *1 (D. Conn. Mar. 27, 2020) and *Pitscitelli v. Univ. of Saint Joseph*, 2020 WL 3316413, at *1 (D. Conn. Jun. 18, 2020) that dismissed Title IX claims when they overlapped with Title VII claims. Judge Dooley based her decision on her finding that

> there is insufficient evidence that Congress intended to create a private right of action for employment discrimination claims under Title IX, thereby allowing a special subclass of claimants to bypass the prerequisites of Title

---

[1] "Neither the United States Supreme Court nor the Second Circuit Court of Appeals have addressed this issue, and the Circuit Court of Appeals and district courts that have are divided." *Othon v. Wesleyan Univ.*, 2020 WL 1492864 (D.Conn. Mar. 27, 2020).

VII. Nor is there any inference to be drawn that Congress intended to provide employees of federally funded programs with greater remedies than other employees.

*Id.* at 11. Judge Dooley's analysis, while immensely detailed, overlooks the broader picture of how Title VII and Title IX interact.

### A. The United States Supreme Court has held that Title VII does not bar similar causes of action under federal or state laws regardless of whether those laws were enacted before or after Congress enacted Title VII.

The U.S. Supreme Court has held that Title VII "creates statutory rights against invidious discrimination in employment and establishes a comprehensive scheme for the vindication of those rights." *Johnson v. Railway Exp. Agency, Inc.*, 421 U.S. 454, 457-58 (1975). Judge Dooley relied on the Supreme Court's precedents in *Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 127 (2005) and *Smith v. Robinson*, 458 U.S. 992, 1012 (1984) to hold that, when a statute contains comprehensive or elaborate remedial schemes, it forecloses alternative avenues of relief. *Othon*, 2020 WL 1492864 at *6 ("The Supreme Court has previously held that statutes with comprehensive or elaborate remedial schemes foreclose alternative avenues of relief").

Judge Dooley acknowledged that the Supreme Court has expressly held that Title VII does not operate as an exclusive scheme for remedying employment discrimination. *Id.* at *6 (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 48-49 (1974)). Her opinion, however, reverses the order of the Supreme Court's language in *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 48-49 (1974) and construes *Alexander*'s holding far too broadly and completely out of context. The *Alexander* Court first stated that "the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes." *Alexander*, 415 U.S. at 48. In the context of a steelworker's Title VII claim after

he received an unfavorable arbitration ruling under the anti-discrimination clause of his collective bargaining agreement, the Supreme Court next stated that "[t]he clear inference is that Title VII was designed to supplement rather than supplant, existing laws and institutions relating to employment discrimination." *Id*. at 48-49.

To construe this subsequent statement as a general rule as Judge Dooley did would take it completely out of context. The *Alexander* Court specifically rejected the argument that the arbitrator's decision carried preclusive effect on Title VII discrimination claims with this statement. It did not establish a definitive rule that Title VII created an exclusive rule against future federal statutes. In fact, the *Alexander* Court took pains not to create such a rule by describing the legislative history that it was relying on for its holding that the congressional intent for Title VII was to allow plaintiffs to raise additional claims and seek additional remedies under other applicable state and federal statutes. *Id*. at 48 n.9. Consequently, while it is true that the Supreme Court has only addressed alternative remedies under statutes that preceded Title VII, *see e.g., Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454 (1975) (addressing an additional claim under 42 U.S.C. § 1981), it has not barred all claims arising under statutes that were enacted after Title VII, but rather expressly stated that an individual may pursue claims under Title VII and other applicable statutes. *Alexander*, 415 U.S. at 48

### B. The United States Supreme Court has held that Title IX independently protects against employment discrimination in federally-funded education programs.

The Defendants concede that Title IX creates substantive rights in the employment context, but argue that they are not independent of those created by Title VII. Dkt. 38, p. 5 n.1. Their concession, however, is fatal to their argument based on Judge Dooley's opinion.

In *North Haven Bd. of Ed. v. Bell*, the Supreme Court held that regulations promulgated by the Department of Health, Education, and Welfare under Title IX for the purpose of preventing sex discrimination in employment were within Title IX's original scope. 456 U.S. 512, 520 (1982). In reviewing Title IX's text, the Court found that it was very broad and could fairly be read to include employees as well as students. *Id*. at 520. The Court also noted the legislative history that supports this conclusion as well. Title IX's drafter and sponsor in the Senate indicated that it was intended to prevent employment discrimination in federally-funded education programs as well. *Id*. at 525-28. Finally, it noted that both the House and the Senate rejected an amendment that would have excluded employment discrimination from Title IX's protections. *Id*. at 528. Consequently, the Supreme Court has clearly recognized that employment discrimination in federally-funded education programs is prohibited by Title IX.

While it is true that the Supreme Court and the Second Circuit have rejected employment discrimination claims under statutes other than Title VII in a variety of cases, those cases had a significant distinguishing characteristic – namely, that the statutes relied on for the alternative and concurrent claims did not independently guarantee substantive rights against employment discrimination, but derived their substantive rights against employment discrimination from Title VII. *Compare Great American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366 (1979) (holding that Title VII precluded employment discrimination claims raised under 42 U.S.C. § 1985(3) because § 1985(3) does not guarantee independent and distinct substantive rights); *Saulpaugh v. Monroe Community Hospital*, 4 F.3d 134 (2d Cir. 1993) (holding that Title VII precludes employment discrimination claims under 42 U.S.C. § 1983 unless the claims are based

on substantive rights independent and distinct from Title VII) *with Johnson v. Railway Express Agency, Inc*. 421 U.S. 454 (1975) (holding that Title VII does not foreclose claims brought under 42 U.S.C. § 1981 because § 1981 provided independent and distinct substantive rights).

Judge Dooley acknowledged that Title IX creates substantive rights in the employment context. *Othon*, 2020 WL 1492864, at *10 ("The Court recognizes that Title IX does create substantive rights…. Both statutes protect individuals from sex-based employment discrimination…"). She, however, found that those rights were indistinguishable from the rights conferred by Title VII. *Id*. at *10 ("But in the employment context those rights are indistinguishable from the rights conferred by Title VII").

Judge Dooley erred by reasoning that an identical legal standard for Title VII and Title IX employment discrimination claims renders Title IX's protections against employment discrimination a derivative of Title VII. *Id*. at *10. The Second Circuit has, indeed, applied the same substantive standard to Title IX claims in reliance on the Supreme Court's invocation of Title VII principles in *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 73 (1992). *See Murray v. New York Univ. College of Dentistry*, 57 F.3d 243 (2d. Cir. 1995). The substantive rights protected by Title IX, however, are independent of the substantive rights protected by Title VII. *Bell*, 456 U.S. at 520, 525-28. Consequently, under *Johnson v. Railway Express Agency, Inc*. 421 U.S. 454 (1975), Dr. Simons' Title IX claim may proceed because it claims the protection of a statute that guarantees substantive rights independently of Title VII.

**C. Title IX establishes a private cause of action for employment discrimination.**

The Defendants invite the Court to selectively interpret Title IX to hold that it does not provide a private cause of action for employment discrimination even though they acknowledge that it provides a private cause of action for education discrimination. Dkt. 38, pp. 5-6. Neither the Supreme Court nor the Second Circuit has ever drawn such a distinction, and the Court should not join Judge Dooley in drawing one. *See Othon*, 2020 WL 1492864, at *9. Such a distinction ignores Title IX's broad language and is fundamentally inconsistent with the Supreme Court's precedents. At best, it represents a backdoor attack on the overwhelming evidence that indicates that Title IX provides independent substantive rights against employment discrimination.

A strict textualist would hold that Title IX does not establish a private cause of action for discrimination against students, let alone employees. *See* 20 U.S.C. § 1682. Indeed, a strict interpretation of Title IX's text would constrain all Title IX remedies to those provided and sought by federal agencies. The Supreme Court, however, rejected the strict textualist approach and held that Title IX created an implied private cause of action for individuals in *Cannon v. Univ. of Chicago*, 441 U.S. 677, 717 (1979).

In doing so, the *Cannon* Court did not segregate Title IX's substantive rights. It recognized a private cause of action for all of Title IX's substantive rights. *Cannon*, 441 U.S. at 717. The specific language that the *Cannon* Court used in its *Cort* analysis[2] unambiguously points to recognizing a private cause of action for all private individuals protected by Title IX. *Id*. at 689-709.

---

[2] In *Cort v. Ash*, 422 U.S 66 (1975), the Supreme Court established a four-factor test for determining whether Congress intended to create a private cause of action in a statute.

The first *Cort* factor examines "whether the statute was enacted for the benefit of a special class of which the plaintiff is a member." *Id*. at 689. The *Cannon* Court described the special class benefited by Title IX in a manner consistent with Title IX's text: "Title IX explicitly confers a benefit on *persons* discriminated against on the basis of sex, and petitioner is clearly a member of that class for whose special benefit the statute was enacted." *Id*. at 694 (emphasis added). While the *Cannon* petitioner was a student, the *Cannon* Court's language refers to persons – in other words, everyone – who is protected by Title IX.

The *Cannon* Court's analysis of the remaining *Cort* factors relied on its definition of the special class under the first factor. Therefore, the *Cannon* Court's recognition of a private cause of action constituted a recognition of a private cause of action for everyone protected by Title IX. As discussed above, Title IX provides protections for employees in federally-funded education programs. Consequently, employees enjoy a private cause of action under Title IX for sex-based discrimination.

The Supreme Court recognized this principle in *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005) when it held that a girls' basketball coach had a private cause of action under Title IX for retaliation after his school fired him for complaining about sex discrimination in the school's athletic program. Jackson was unequivocally an employee of the school, not a student. *Jackson*, 544 U.S. at 171. Nonetheless, the Supreme Court recognized that he had a private cause of action under Title IX for retaliation – a form of employment discrimination. *Id*. at 176-77, 178.

The *Jackson* Court attached no qualifications to Title IX claims brought by employees. *See, e.g.*, *id.* at 171 (Title IX retaliation claims extend to "individual[s]," not

individuals who cannot bring Title VII claims); *id*. at 173 (20 U.S.C. § 1681(a) "broadly" encompasses "any person"); *id*. at 179 & n.3 (Title IX is "broadly worded" and its "beneficiaries plainly include all those" subjected to sex discrimination). Furthermore, the *Jackson* Court clearly indicated that, since *Cannon*, it had "consistently interpreted Title IX's private cause of action broadly…." *Id*. at 169.

Judge Dooley attempted to distinguish *Jackson* by stating that the Supreme Court recognized a cause of action for him because he had no recourse under Title VII. *Othon*, 2020 WL 1492864 at *10. While the *Jackson* Court did state that the lack of a remedy of any remedy other than Title IX was a compelling reason for its decision, *Jackson*, 544 U.S. at 180-81, it did not look to Title VII first to see if Jackson had a remedy. Instead, the *Jackson* Court first recognized the private cause of action under Title IX independently and then raised Jackson's lack of another remedy in disposing of the board of education's arguments. *See id. generally*. Consequently, Judge Dooley reads *Jackson* far too broadly as do the Defendants who rely on her reasoning to argue that Dr. Simons' Title IX claim "must be dismissed." Dkt. 38, p. 7.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should find that the Defendants have waived their argument by not raising it in their initial motion to dismiss and supporting pleadings. In the alternative, the Court should reject their argument on the merits for the foregoing reasons.

THE PLAINTIFF

By: /s/ NORMAN A. PATTIS /s/
      NORMAN A. PATTIS
      PATTIS & SMITH, LLC
      383 Orange Street
      New Haven, CT 06511
      203.393.3017
      203.393.9745
      npattis@pattislaw.com
      ct13120

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 1, 2020, I filed a copy of the foregoing electronically and served a copy of the foregoing by mail on anyone unable to accept electronic filing. The Court's electronic filing system will send notice of this filing by e-mail to all parties. Parties may access this filing through the Court's CM/ECF System.

/s/ NORMAN A. PATTIS /s/
NORMAN A. PATTIS