# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MICHAEL SIMONS | : | CIVIL ACTION NO. |
|         Plaintiff, | : | 3:19-CV-01547(JBA) |
| v. | : | |
| | : | |
| YALE UNIVERSITY, | : | |
| PETER SALOVEY, | : | |
| ROBERT ALPERN, M.D., | : | |
| UNKNOWN PERSONS | : | |
|         Defendant. | : | NOVEMBER 8, 2021 |

## DEFENDANTS' NOTICE REGARDING PRE-FILING CONFERENCE FOR MOTION FOR SUMMARY JUDGMENT

Pursuant to the Court's Order on Pretrial Deadlines and its September 9, 2021 Order for pre-filing conference to be held on November 15, 2021, defendants Yale University, Peter Salovey and Robert Alpern, M.D. (the "University defendants"), hereby provide notice of the bases upon which they expect to move for summary judgment on the remaining five counts of the plaintiff's seven-count Complaint dated September 30, 2019.[1]

---

[1] The Court scheduled the pre-filing conference after colloquy with counsel during the September 9, 2021 status conference; the University defendants therefore provide this notice of their intended bases for summary judgment in lieu of a motion for pre-filing conference, to advise the Court and facilitate conferring with plaintiff's counsel as envisioned by the Order on Pretrial Deadlines.

The plaintiff, Dr. Michael Simons, is a Professor of Medicine who was previously the Chief of the Section of Cardiovascular Medicine at the Yale University School of Medicine and Director of its Cardiovascular Research Center. After he repeatedly pursued a romantic relationship with a junior female doctor who rejected his advances, he was determined to have retaliated against her then-boyfriend, another doctor who was junior to Dr. Simons and in the same Section. In 2013 the plaintiff was found guilty of violating the University's sexual harassment policy by the University-Wide Committee on Sexual Misconduct ("UWC"), and he was suspended from his position as Section Chief for 18 months. The details were widely reported in the media, including repeatedly in *The New York Times*.

During Dr. Simons's suspension the University hired an independent consultant to conduct a 360-degree review of his management and leadership. When more than 90% of the faculty members surveyed opposed or were unsure about Dr. Simons's continued leadership of the Section, the Chair of the Department of Internal Medicine decided that the plaintiff should resign permanently as Section Chief. Similar reactions within the Cardiovascular Research Center led to the plaintiff's concomitant removal as its Director. The

plaintiff continued to hold the Robert W. Berliner endowed professorship until 2018, when a member of the Berliner family complained that someone who had violated the University's sexual misconduct policy held the chair endowed by her family. Dr. Simons agreed to transfer the Berliner chair in order to honor both the family's request and the new Chief of Cardiology, and he agreed to accept the Von Zedtwitz professorship under the same financial terms.

The fact of the plaintiff being named the Von Zedtwitz chair was perceived by the University community as bestowing a new honor on a known sexual harasser; thousands therefore petitioned the University defendants for removal of the honorific. For the good of the community, the Dean of the School of Medicine, defendant Dr. Alpern, ultimately decided to recommend to defendant President Salovey—and, in turn, to the Board of Trustees—that the plaintiff's endowed chair be rescinded. The plaintiff was removed as Von Zedtwitz chair but continues as a tenured professor under the same financial terms as when he held an endowed chair.

In his Complaint, the plaintiff alleges claims for: (1) breach of contract; (2) breach of the implied warranty of good faith and fair dealing; (3) wrongful discharge; (4) negligent infliction of emotional distress; (5) violation of Title IX

based on selective enforcement and alleged Constitutional Due Process and Double Jeopardy protections; (6) gender discrimination in violation of Title VII; and (7) breach of privacy. The plaintiff's wrongful discharge and negligent infliction of emotional distress claims were dismissed by this Court on September 30, 2020. *See* Doc. No. 44. The University defendants submit that summary judgment on the remaining five counts is appropriate because there are no genuine issues of material fact and they are entitled to judgment as a matter of law.

The plaintiff cannot establish or maintain a breach of contract claim in the first instance because he cannot identify any clause of his contract that was breached by the University defendants. The plaintiff's nomination or appointment to certain positions was not guaranteed for an express period of time or granted for a term of years, thereby making him at-will as to those positions in any event. To the extent that the plaintiff asserts that his positions were guaranteed for an express period of time, those claims are barred by the statute of frauds. Moreover, the plaintiff is barred from recovering under a breach of contract claim because he materially breached the

contract first when he violated the University's faculty handbook and sexual misconduct policies.

The plaintiff also cannot establish a breach of the implied warranty of good faith and fair dealing, which requires him to demonstrate that the University defendants acted in bad faith to prevent him from receiving the benefits of his contract; and he cannot have a statutory remedy for the alleged breaches. *See, e.g., Bagley v. Yale Univ.*, 42 F. Supp. 3d 332, 337 (D. Conn. 2014); *TD Bank, N.A. v. J & M Holdings, LLC,* 143 Conn. App. 340, 349 (2013). The plaintiff cannot show that the University defendants acted in bad faith and his claims are precluded by the applicable statutory remedies; therefore this claim fails, too. Additionally, as with his breach of contract claim, the plaintiff cannot identify specific benefits of the contract that he was prevented from receiving, and this claim fails on that basis as well.

The plaintiff cannot establish a *prima facie* case of Title VII discrimination because: (1) two of his three claimed adverse employment actions—i.e., his removal as Section Chief and Director—are time-barred and barred for his failure to exhaust his administrative remedies by bringing them before the Equal Employment Opportunity Commission or the Connecticut

Commission for Human Rights and Opportunities; (2) there is no direct evidence of discrimination; (3) he has not suffered an actionable adverse employment action; and (4) he is unable to show that he was treated disparately as compared with any similarly-situated females because he cannot identify any valid comparators. Moreover, even if this Court does find that the plaintiff can establish a *prima facie* case of discrimination, summary judgment should still be granted because the University defendants have articulated legitimate, nondiscriminatory reasons for their actions that the plaintiff cannot prove were pretext for discrimination.

The plaintiff's Title IX claim fails because it is duplicative and preempted by his Title VII claim[2], and it is legally insufficient in any event. He cannot establish selective enforcement on the basis of gender under Title IX. Specifically, the plaintiff cannot show: (1) that the University was acting in its capacity as a state actor such that his alleged Constitutional Due Process and Double Jeopardy protections apply here; or (2) that the University's actions were affected by the plaintiff's gender, or any form of gender bias, as compared

---

[2] The University defendants recognize that this Court has ruled to the contrary with respect to the preemption issue in *Castro v. Yale University*, 518 F.Supp.3d 593 (D. Conn. 2021) and intend to preserve this issue for appeal.

with any similarly-situated female comparator, which—again—he cannot identify.

Finally, the plaintiff's breach of privacy claim fails as a matter of fact and law because, at the conclusion of discovery, he still cannot identify any individuals—either employed by the University or otherwise—who committed the alleged breach of privacy, much less any non-public information that was disclosed. The parties are wholly unaware of which individuals allegedly breached the plaintiff's privacy by disclosing confidential information concerning the plaintiff's UWC proceedings to Nancy Berliner and/or her family in 2018. As a result, the University defendants are also entitled to summary judgment with respect to this claim, which is not directed to them in any event. *See* Doc. No. 44, pp. 24-25.

The record in this case, taken as a whole, demonstrates that there is no genuine issue for trial and the University defendants accordingly intend to move this Court to enter summary judgment against the plaintiff on all remaining counts alleged in the Complaint.

 

                          THE UNIVERSITY DEFENDANTS

BY: _____
      KEVIN C. SHEA (CT04261)
      CLENDENEN & SHEA, LLC
      400 Orange Street
      New Haven, CT 06511
      Telephone: 203-787-1183
      Fax: 203-787-2847
      kcs@clenlaw.com

CERTIFICATION:

    This is to certify that a copy of the foregoing has been sent to all required notification parties either via operation of the Court's electronic notification system or by first-class mail, postage pre-paid to anyone unable to accept such notification on November 8, 2021.

_____
CLENDENEN & SHEA, LLC

8