# EXHIBIT 7

```
                 UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT


 - - - - - - - - - x
MICHAEL SIMONS,              |
          Plaintiff,         |
                             |  3:19-CV-01547(VAB)
          v.                 |
                             |
YALE UNIVERSITY,             |
PETER SALOVEY,               |
ROBERT ALPERN, M.D.,         |
UNKNOWN PERSONS,             |
          Defendants.        |  August 4, 2021
 - - - - - - - - - x
```

DEPOSITION OF GARY DESIR, M.D.

via videoconference

Taken before Kristine A. Paradis, LSR 338, a Court Reporter and Notary Public within and for the State of Connecticut, pursuant to Notice and the Federal Rules of Civil Procedure, via videoconference, on August 4, 2021, commencing at 9:18 a.m.

FALZARANO COURT REPORTERS, LLC
4 Somerset Lane
Simsbury, Connecticut 06070
860.651.0258
www.falzaranocourtreporters.com

Falzarano Court Reporters, LLC

1  Q    Was he removed from his position at
2  Yale-New Haven Hospital for a period of 18 months?
3  A    Yes.
4  Q    Now, once that 18-month period passed,
5  was Dr. Simons restored to his role in the medical
6  school?
7  A    He was not.  Not as a section chief.
8  Q    How about as professor?
9  A    That remain unchanged.
10 Q    Okay.  So, he remained professor
11 throughout the period of suspension, correct?
12 A    Yes.
13 Q    But he did not return as section chief,
14 correct?
15 A    Correct.
16 Q    Why did he not return as section chief?
17 A    So, because of feedback from faculty in
18 cardiology, I decided to actually do a larger
19 survey -- what we call -- this was a 180 survey --
20 and actually query the faculty and the staff as to
21 what his skills were as a leader and what the
22 culture was, what the environment was.  It's
23 called a 360 survey.  And it was run by a company
24 for us.
25      And based on the results of the survey,

```
 1   I decided that the -- in discussion with the dean
 2   and the hospital, that the best course for us as a
 3   department was to ask him not to return as section
 4   chief.
 5        Q    Did you ask him not to return as section
 6   chief because of the UWC proceeding?
 7        A    No.
 8        Q    Were your reasons for asking him not to
 9   return as section chief entirely independent of
10   the UWC proceeding?
11        A    The reason I asked him to step down was
12   the result of what we saw in the feedback from
13   faculty in terms of his leadership and his impact
14   on faculty well-being and the culture and the
15   environment in cardiology.
16        Q    Do you have an impression about whether
17   there would have been a faculty call for review of
18   his leadership if there had not been a UWC
19   finding?
20             MR. SHEA:  Object to the form.  You
21        can answer.
22             THE WITNESS:  My guess is yes.
23   BY MR. PATTIS:
24        Q    So, is it fair to characterize
25   Dr. Simons' status as having been removed as
```

1   Dr. Simons' status -- as occupant of the Berliner
2   chair affected by your decision not to have him
3   return as section chief?
4        A    No.
5        Q    Did he remain in the Berliner chair?
6        A    He did.
7        Q    Give me one second, please.
8             So, is it fair to say that upon his
9   removal as section chief he occupied the Berliner
10  chair, he was still a professor, but he was no
11  longer director of CVRC?
12             MR. SHEA:  Object to the form.  You
13        can answer.
14             THE WITNESS:  I don't remember the
15        timing, but the result of the 360
16        indicated discord within the CVRC.  And
17        in conversation with faculty working the
18        CVRC, though some supported Dr. Simons,
19        others were quite dissatisfied with his
20        leadership skills and the culture that
21        had developed there.  So, it was my
22        opinion that he could not remain as
23        chief of the CVRC.
24  BY MR. PATTIS:
25        Q    You have made several references to the

37

```
 1   culture under Dr. Simons' leadership.  Can you
 2   explain what you mean by that?
 3       A    What I mean by that, the majority of the
 4   faculty didn't feel cared for and it wasn't an
 5   environment in which they felt safe and were
 6   performing at their best.
 7       Q    I don't mean to sound cynical, but what
 8   does that -- these are highly accomplished adults,
 9   not school children.  What does it mean that they
10   "didn't feel cared for"?
11              MR. SHEA:  Object to the form.  You
12          can answer.
13              THE WITNESS:  Well, that's what was
14          their feeling.  That's how they felt.
15   BY MR. PATTIS:
16       Q    How are they to be cared for?  I mean,
17   what does that --
18       A    Well, as a leader, you have to mentor
19   people; you have to advocate for them; you have to
20   make sure that they get the right resources.  And
21   the majority of the faculty didn't feel that way.
22              MR. PATTIS:  I'm mindful of the
23          time, Doctor.  I'm going to shift
24          relatively abruptly.
25              Cam, may we please see Exhibit 27?
```

```
 1                STATE OF CONNECTICUT
 2       I, KRISTINE A. PARADIS, LSR 338, a Notary Public
 3   duly commissioned and qualified in and for the State
 4   of Connecticut, do hereby certify that pursuant to
 5   Notice, there came remotely before me via
 6   videoconference on the 4th day of August, 2021, the
 7   following named person, to wit:  GARY DESIR, M.D.,
 8   who was by me duly sworn to testify to the truth and
 9   nothing but the truth; that he was thereupon
10   carefully examined upon his oath and his examination
11   reduced to writing under my supervision; that this
12   deposition is a true record of the testimony given by
13   the witness.
14       I further certify that I am neither attorney nor
15   counsel for, nor related to, nor employed by any of
16   the parties to the action in which this deposition is
17   taken, and further, that I am not a relative or
18   employee of any attorney or counsel employed by the
19   parties hereto, or financially interested in this
20   action.
21       IN WITNESS THEREOF, I have hereunto set my
22   hand this 26th day of August 2021.
23                              Kristine Paradis
24                    KRISTINE A. PARADIS, CSR #338
                         Certified Shorthand Reporter
25   My Commission expires:   May 31, 2023
```