# Exhibit K

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

—————————————————

MICHAEL SIMONS                    CIVIL ACTION NO.
           Plaintiff,           3: 19-CV-0154 7(VAB)

    v.

YALE UNIVERSITY,
PETER SALOVEY,
ROBERT ALPERN, M.D.,
UNKNOWN PERSONS
——————————— Defendant.      March 12, 2021

## **PLAINTIFF'S RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES AND REQUEST FORPRODUCTION OF DOCUMENTS TO THE PLAINTIFF**

Pursuant to the Federal Rules of Civil Procedure, Rules 33 and 34, Defendants Yale University ("University"), Peter Salovey, and Robert Alpern, M.D. ("University Defendants") hereby respectfully request that the plaintiff, Michael Simons, answer the following interrogatories separately and in writing, under oath, and produce at the office of Clendenen & Shea LLC, 400 Orange Street, New Haven Connecticut 06511, the following documents within thirty (30) days after the date of service of this Request:

## **INSTRUCTIONS**

1.    These requests shall be deemed continuing so as to require

supplemental responses if the plaintiff acquires any additional information or documents between the time a response is served and the time of trial.

2.      In responding to these requests, the plaintiff shall furnish all information and documents available to him at the time of his response, including information and/or documents in the possession, custody or control of each of the plaintiffs agents, employees or representatives. These requests also seek non-privileged information and documents in the possession, custody or control of the plaintiffs attorneys.

3.      All terms defined below are used throughout these requests in the precise manner in which they have been defined and are to be consistently so interpreted. Some terms are specially defined so as to have a broader meaning herein than they may have in general usage, and accordingly, responses will be inadequate that do not take into account the special sense in which terms such as "document," "identify," "relating to," and other defined terms are defined and used.

4.      If you claim that the attorney-client privilege or any other privilege or protection applies to any documents sought please produce a log containing the following information:

(i)     The type of document or electronically stored information;

(ii)    The general subject matter of the document or electronically stored information;

(iii)   The date of the document or electronically stored information;

(iv)    The author of the document or electronically stored information; and

(v)     Each recipient of the document or electronically stored information.

## DEFINITIONS

1.     **Document.** The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a). A draft or non-identical copy is a separate document within the meaning of this term.

2.     **Communication.** The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

3.     **Identify a Document.** To "identify" or state the "identity of" a document means to provide, to the extent known, information about the (i) type of document; (ii) its general subject matter; (iii) the date of the document; (iv)

3

its current location; and (v) its author(s), addressee(s) and recipient(s).

4. **Identify a Natural Person.** To "identify" or state the "identity" of a natural person means to state his or her full name, present or last known home address and telephone number, and present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person needs to be listed in response to subsequent discovery requesting the identification of that person.

5. **Person.** The term "person" is defined as any natural person or any business, legal or governmental entity or association.

6. **You/Yours.** The terms "you" and "your" mean the plaintiff, Michael Simons, and any of his agents, representatives, and all persons acting or purporting to act on his behalf.

7. **University.** The term and "University" means Yale University and its commissioners, employees, agents, representatives and all persons acting or purporting to act on its behalf.

8. **University Defendants.** The term and "University Defendants" means Defendants Yale University, Peter Salovey, and Robert Alpern, M.D.

9. **Concerning.** The term "concerning" means relating to, referring

to, describing, evidencing or constituting.

     **10.**    **All/Each.** The terms "all" and "each" shall both be construed as all and each.

     **11.**    **And/Or.** The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

     **12.**    The use of the singular form of any word includes the plural and vice versa.

     **13.**    **Any.** The term "any" shall mean "any and all."

     **14.**    The term "with respect to," "relating to" or "which relates to" a given subject shall mean any document that constitutes, evidences, contains, embodies, comprises, reflects, identifies, states, refers to, deals with, comments on, responds to, describes, involves or is in any way pertinent to that subject, including, but not limited to, documents concerning the presentation of other documents.

     **15.**    **Complaint.** The term "Complaint" means the Complaint filed in the above-captioned action.

**16.**     The use of the singular form of any word includes the plural and vice versa, and the use of the past tense includes the present tense and vice versa, as necessary to bring within the scope of each request for production allresponses that might otherwise be considered outside its scope.

## INTERROGATORIES

1.     State the following:

(a)     your full name and any other name(s) by which you have been known;

(b)     your date of birth;

(c)     your home address; and

(d)     your business address.

**RESPONSE:**

**a. Michael Simons; Michael Simanovsky**

**b. July 19, 1957**

**c. 85 Church Street, Unit 5E, New Haven, CT 06510**

**d. 300 George St., 7th Floor, New Haven, CT 06511**

2.     Identify all individuals whom you believe have information concerning or relating to your claims in the Complaint, and provide a brief description of the information you believe he or she has. As to each individualnamed, state whether to your knowledge, or the knowledge of your attorney, such individual has given any statement or statements concerning the

subjectmatter of the Complaint in this lawsuit. If your answer to this

Interrogatory is affirmative, state also:

>   (a) the date on which the statement or statements were taken;
>
>   (b) the names and addresses of the person or persons who took such statement or statements;
>
>   (c) the names and addresses of any person present when such statement or statements were taken;
>
>   (d) whether such statement or statements were written, made byrecording device or taken by court reporter or stenographer; and
>
>   (e) the names and addresses of each person having custody or a copy or copies of such statement or statements.

**RESPONSE:**

**Professor John F. Martin – The Plaintiff believes that he has full knowledge of possible fraudulent billing practices at the Yale New Haven Hospital, the Plaintiff's efforts to reform those practices, possible retaliation for the Plaintiff's efforts through the sexual harassment investigation and discipline, knowledge of the investigation into the Plaintiff's alleged sexual misconduct, knowledge of the process by which the Plaintiff was disciplined and then subsequently removed from his various positions. The Plaintiff is unaware of any statements that he may have given.**

**Professor Alexandra Lansky - The Plaintiff believes that she has full knowledge of possible fraudulent billing practices at the Yale New Haven Hospital, the Plaintiff's efforts to reform those practices, possible retaliation for the Plaintiff's efforts through the sexual harassment investigation and discipline, knowledge of the investigation into the Plaintiff's alleged sexual misconduct, knowledge of the process by which the Plaintiff was disciplined and then subsequently removed from his various positions. The Plaintiff is unaware of any statements that she may have given.**

**Professor William Sessa - The Plaintiff believes that he has full knowledge of possible fraudulent billing practices at the Yale New Haven Hospital, the Plaintiff's efforts to reform those practices, possible retaliation for the Plaintiff's efforts through the sexual harassment investigation and discipline, knowledge of the investigation into the Plaintiff's alleged sexual misconduct, knowledge of the process by which the Plaintiff was disciplined and then subsequently removed from his various positions. The Plaintiff is unaware of any statements that he may have given.**

Professor Martin Schwartz - The Plaintiff believes that he has full knowledge of possible fraudulent billing practices at the Yale New Haven Hospital, the Plaintiff's efforts to reform those practices, possible retaliation for the Plaintiff's efforts through the sexual harassment investigation and discipline, knowledge of the investigation into the Plaintiff's alleged sexual misconduct, knowledge of the process by which the Plaintiff was disciplined and then subsequently removed from his various positions; knowledge of faculty members who opposed what was being done to the Plaintiff. The Plaintiff is unaware of any statements that he may have given.

Professor Henry Cabin – The Plaintiff is unsure as to the exact extent of his knowledge but believes that it encompasses at least knowledge of the investigation into the Plaintiff's alleged sexual misconduct, knowledge of the process by which the Plaintiff was disciplined and then subsequently removed from his various positions; knowledge of faculty members who opposed what was being done to the Plaintiff. The Plaintiff is unaware of any statements that he may have given.

Professor Michael Cleman – The Plaintiff is unsure as to the exact extent of his knowledge but believes that it encompasses at least knowledge of the investigation into the Plaintiff's alleged sexual misconduct, knowledge of the process by which the Plaintiff was disciplined and then subsequently removed from his various positions; knowledge of faculty members who opposed what was being done to the Plaintiff. The Plaintiff is unaware of any statements that he may have given.

Professor Lynda Rosenfeld – The Plaintiff is unsure as to the exact extent of her knowledge but believes that it encompasses at least knowledge of the investigation into the Plaintiff's alleged sexual misconduct, knowledge of the process by which the Plaintiff was disciplined and then subsequently removed from his various positions; knowledge of faculty members who opposed what was being done to the Plaintiff. The Plaintiff is unaware of any statements that she may have given.

Professor Rachel Lampert – The Plaintiff is unsure as to the exact extent of her knowledge but believes that it encompasses at least knowledge of the investigation into the Plaintiff's alleged sexual misconduct, knowledge of the process by which the Plaintiff was disciplined and then subsequently removed from his various positions; knowledge of faculty members who opposed what was being done to the Plaintiff. The Plaintiff is unaware of any statements that she may have given.

Professor Judith Meadows – The Plaintiff is unsure as to the exact extent of her knowledge but believes that it encompasses at least knowledge of the investigation into the Plaintiff's alleged sexual misconduct, knowledge of the process by which the Plaintiff was disciplined and then subsequently removed from his various positions; knowledge of faculty members who opposed what was being done to the Plaintiff. The Plaintiff is unaware of any statements that she may have given.

**Professor Robert Soufer** – The Plaintiff is unsure as to the exact extent of his knowledge but believes that it encompasses at least knowledge of the investigation into the Plaintiff's alleged sexual misconduct, knowledge of the process by which the Plaintiff was disciplined and then subsequently removed from his various positions; knowledge of faculty members who opposed what was being done to the Plaintiff. The Plaintiff is unaware of any statements that he may have given.

**Professor Lissa Sugeng** – The Plaintiff is unsure as to the exact extent of her knowledge but believes that it encompasses at least knowledge of the investigation into the Plaintiff's alleged sexual misconduct, knowledge of the process by which the Plaintiff was disciplined and then subsequently removed from his various positions; knowledge of faculty members who opposed what was being done to the Plaintiff. The Plaintiff is unaware of any statements that she may have given.

**Professor Margaret Bia** – The Plaintiff is unsure as to the exact extent of her knowledge, but based on her statements to the New York Times, he believes that she has information about how the Yale medical school faculty learned of the UWC proceedings and of how they reacted. The Plaintiff is unaware of any statements that she may have given.

**Professor Claire Bowern** - The Plaintiff is unsure as to the exact extent of her knowledge, but he believes that she has information about how the Yale medical school faculty learned of the UWC proceedings and of how they reacted. The Plaintiff is unaware of any statements that she may have given.

**Provost Benjamin Polak** – Provost Polak imposed the initial discipline on the Plaintiff as a result of the UWC proceedings and declined to investigate breaches of the UWC's confidentiality. The Plaintiff is unaware of any statements that he may have given.

**Dr. Gary Desir** – Doctor Desir coordinated with Defendant Alpern and Professor Jack Elias to threaten and then remove the Plaintiff from his position as the Director of the Cardiovascular Research Center. He has intimate knowledge of that process. The Plaintiff is unaware of any statements that he may have given.

**President Peter Salovey** – The Plaintiff's beliefs as to his knowledge are articulated at length in his complaint. The Plaintiff is unaware of any statements that he may have given.

**Dean Robert Alpern** - The Plaintiff's beliefs as to his knowledge are articulated at length in his complaint. The Plaintiff is unaware of any statements that he may have given.

**Professor Jack Elias** - Doctor Desir coordinated with Defendant Alpern and Professor Jack Elias to threaten and then remove the Plaintiff from his position as the Director of the Cardiovascular Research Center as well as Chief of Cardiovascular Medicine at the Yale School of Medicine and his endowed professorships. He has intimate knowledge of what transpired. The Plaintiff is unaware of any statements that he may have given.

**Stephanie Spangler** – The Plaintiff believes that, as the Defendant's Title IX coordinator, she has the most knowledge about Yale's Title IX procedures as well as knowledge related to the Plaintiff's specific Title IX process. The Plaintiff is unaware of any statements that she may have given.

**Tamar Lewin** – The Plaintiff believes that Ms. Lewin, a New York Times reporter, knows who initially breached the confidentiality of the UWC proceedings as well as everyone else who was guilty of breaching the proceedings. The Plaintiff is unaware of any statements that she may have given.

**Nancy Berliner** – The Plaintiff believes that Ms. Berliner has knowledge as to a breach of the UWC proceedings confidentially as well as the decision to remove the Plaintiff from the Berliner Professorship. The Plaintiff is unaware of any statements that she may have given.

3.     Identify all individuals currently or formerly employed by the University who you believe were involved in the events that you claim support your claims of discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and Title IX of the Education Amendments of 1972, 42 U.S.C. § 1681, and describe the involvement you believe each had.

**RESPONSE:**

**Provost Benjamin Polak** – Provost Polak imposed the initial discipline on the Plaintiff as a result of the UWC proceedings and declined to investigate breaches of the UWC's confidentiality.

**Dr. Gary Desir** – Doctor Desir coordinated with Defendant Alpern and Professor Jack Elias to threaten and then remove the Plaintiff from his position as the Director of

the Cardiovascular Research Center. He has intimate knowledge of that process.

**President Peter Salovey** – The Plaintiff's beliefs as to his actions are articulated at length in his complaint.

**Dean Robert Alpern** - The Plaintiff's beliefs as to his actions are articulated at length in his complaint.

**Professor Jack Elias** - Doctor Desir coordinated with Defendant Alpern and Professor Jack Elias to threaten and then remove the Plaintiff from his position as the Director of the Cardiovascular Research Center as well as Chief of Cardiovascular Medicine at the Yale School of Medicine and his endowed professorships. He has intimate knowledge of what transpired.

**Dr. Gary Desir** – Doctor Desir coordinated with Defendant Alpern and Professor Jack Elias to threaten and then remove the Plaintiff from his position as the Director of the Cardiovascular Research Center.

4. Has any disciplinary or otherwise adverse employment action everbeen taken against you while you were employed by the University? If yes, please state as to each such instance:

(a)  the date of the occurrence which gave rise to the allegedaction;

(b)  the events which gave rise to the alleged action, including any University policies and/or contract terms you violated orbreached;

(c)  the alleged action taken against you;

(d)  the date of alleged action;

(e)  identify each person involved in the occurrence which gaverise to the alleged action;

(f)  the role played by each person involved in the occurrencethat gave rise to the alleged action; and

(g)  the action, if any, taken  against each other  person  involved

in the occurrence that gave rise to the alleged action.

**RESPONSE:**

**The Plaintiff's only discipline has been that alleged in the complaint.**

**For each instance of discipline, the following is the same for all:**

a. **The Plaintiff does not recall the exact dates, but between February 2010 and May 2010.**
b. **The alleged events were that I penned a love letter to a colleague who was not a subordinate and continued to email her in an attempt to woo her when she told me that she was in a relationship with one of my subordinates.**

**The Plaintiff answer the remaining questions as follows:**

c. **The Plaintiff was suspended as from his position as Chief of Cardiology in the Yale School of Medicine for 18 months. The Defendants subsequently forced him to resign the position. The Plaintiff was subsequently forced by the Defendants to exchange the Robert W. Berliner Professorship of Medicine for the Waldemar Von Zedtwitz Professorship of Cardiology. The Defendants then removed the Plaintiff from the Waldemar Von Zedtwitz Professorship.**
d. **The 18 month suspension came on October 14, 2013. The forced resignation of the Chief of Cardiology position came in October 2014 to the best of the Plaintiff's recollection. The forced exchange of the Berliner Professorship came in June 2018. The removal from the Von Zedtwitz Professorship came on September 21, 2018.**
e. **Frank Giordano, Annarita DiLorenzo**
f. **Both Giordano and DiLorenzo were the complainants in the UWC proceedings and the alleged victims in the occurrence.**
g. **None that the Plaintiffs knows of.**

5.    In Paragraph 8 of your Complaint, you allege you were offered a tenured professorship, a position as the Chief of Cardiology in the School of Medicine, and the Berliner Professorship. Please state all the facts upon which you base this allegation, including but not limited to:

(a)    the circumstances of your initial hiring, including the date, and the position for which you were hired;

      (b)     the dates and positions of all subsequent employment by thedefendant;

      (c)     the names and titles of your supervisors in each employmentposition you held with the defendant;

      (d)     the findings of any employer review, peer review, or self-review; and

      (e)     the terms of the offer and the manner in which those terms were memorialized.

**RESPONSE:**

a. **In 2008, the Plaintiff was an internationally renowned cardiologist, a tenured professor, and held the A.G. Huber Endowed professorship at Dartmouth College, served as Chief of Dartmouth Cardiology Section, and Director of Dartmouth's renowned Angiogenesis Research Center. Yale University recruited him by offering him a tenured professorship at Yale's medical school, a position as Chief of Cardiology in the Yale School of Medicine, the Robert W. Berliner Professorship of Medicine – an endowed chair, and appointment to the Chief of Cardiovascular Medicine at Yale-New Haven Hospital. The Plaintiff received an offer letter on May 22, 2008 for the Chief of Cardiology position and the Chief of Cardiovascular Medicine position with a promise to nominate him for the Berliner Professorship – a nomination that he was assured would be accepted and which was on October 20, 2008.**

b. **Approximately a year later, the Plaintiff was named Director of Yale's Cardiovascular Research Center.**

c. **Jack Elias.**

d. **Yale's Cardiovascular Program conducted an external review of the Plaintiff's work on September 25-26, 2012. It found that his work had "been nothing short of spectacular."**

e. **See the answer to A generally. The terms of the offer were memorialized in a letter that the Plaintiff, Jack Elias, Richard D'Aquila, and Robert Alpern signed.**

6.     In Paragraph 9 of your Complaint, you allege that you were party to a written contract that provided for your appointment to the Berliner Professorship. In Paragraph 45 of the Complaint you further allege that "A material term of the contract was the University's and Dr. Simons' being

26

bound and obligated to the rights and duties imposed by the Procedures Governing the University-Wide Committee on Sexual Misconduct." In Paragraph 46 of the Complaint you further allege that the University "unilaterally and unjustly breached the contract." Please state all the facts upon which you base these allegations, including but not limited to:

    (a)    the circumstances of the negotiation of the contract, including the identity of all the individuals involved with negotiating the contract and the dates of all negotiations;

(b)    all the terms of the contract, including any termsincorporated by reference, and the identity of all material terms;

(c)    any amendments to the contract, including the manner of amendment, the dates of amendment, theparties to the amendment, and the obligations thereunder;

(d)    whether it is your contention that you performed your obligations under that contract, and if so, all the facts upon which you base this contention; and

(e)    the specific provisions of the contract or of the Procedures Governing the University-Wide Committeeon Sexual Misconduct that you allege the University violated and the circumstances of those alleged violations.

**RESPONSE:**

    **a. The Plaintiff does not recall all of the negotiations or their dates. The Plaintiff does recall that he asked for and was promised positions at Yale that were comparable to the ones that he held at Dartmouth: an tenured professorship, an endowed professorship, and various positions at the head of research and medical specialty sections.**

    **b. See the answer to A as well as the written contract produced among the documents requested.**

    **c. None to the best of the Plaintiff's knowledge.**

    **d. The Plaintiff contends that he performed his obligations under the contract. The Defendants' own external assessment rated his work as nothing short of spectacular. The Plaintiff continues to dispute the findings of misconduct by the UWC panel even though he has taken responsibility for his actions and apologized.**

e.  **The Defendants violated UWC Section 3.3, which requires all participants to keep documents confidential. The Plaintiff alleges that employees of Yale University supplied documents in the Plaintiff's UWC proceeding to New York Times reporter, Tamar Lewin, and discussed the nature of the proceedings at length. He further alleges that Yale University itself, through the Yale Alumni magazine – a Yale University Department, further publicized details by regurgitating New York Times stories, officially confirming the narrative.**

**The Defendants violated UWC Section 3.4, which forbids retaliation, threatening, or coercing of individuals who exercise their rights under Title IX and the UWC procedures. The Plaintiff alleges that the Defendants repeatedly coerced him into relinquishing positions and discriminated in removing him from positions as a form of second punishment for asserting his rights against being punished twice for the same offense under Title IX.**

**Through these violations, the Defendants violated the implied covenant of good faith and fair dealing contained in every contract, including the one between them and the Plaintiff, which required them to adhere to their own policies.**

7.      In Paragraph 21 of the Complaint, you allege, "After Judge Hobson's [sic] lengthy fact-finding, the UWC concluded that Dr.Simons had, infact, sexually harassed Dr. Doe. It recommended that Dr. Simons be suspended as chief of cardiology for a period of five years. After an appeal to the university's provost, the suspension was reduced to 18 months. The sanction was confirmed by Defendant Salovey and imposed." Please state all the facts upon which you base this allegation, including but not limited to:

> (a) the manner in which the appeal was made and by whom,
> (b) the identity of any written submissions or records produced in connection with the appeal, and the identity any other recordsor documents relating to the appeal.

**RESPONSE:**

a.  **The Plaintiff made the appeal by letter that he believes that he emailed to Defendant Salovey on October 21, 2013.**
b.  **The only records that the Plaintiff believes that existed in connection with the appeal were Provost Polak's decision letter dated October 14, 2013, the Plaintiff's appeal letter dated October 21, 2013, and President Salovey's**

**decision on November 7, 2013.**

8.      In Paragraph 23 of your Complaint, you allege that the "the discipline imposed on Dr. Simons was leaked by one or unknown persons to the media, including the New York Times." You further allege that "the university, in 2013, forced Dr. Simons to resign as Chief of Cardiology. After asecond series of stories in The New York Times, the university then demandedthat Dr. Simons resign as Director of the Cardiovascular Research Center. When Dr. Simons refused to do so, the university took the position away from him." Please state all the facts upon which you base this allegation, including but not limited to:

> (a) the identity of the persons who you claim "leaked" the disciplineimposed on Dr. Simons to the New York Times;
>
> (b) the circumstances of the publication of your discipline by the media including the New York Times, including the identity ofall publishers, the dates of all publication, the titles of the articles, and the identity of all authors;
>
> (c) whether it is your contention that you did not tender your resignation as Chief of Cardiology;
>
> (d) the circumstances in which the University "forced" you to resignas Chief of Cardiology, including the manner in which the University "forced" you to resign, the individuals who "forced" you to resign, and the dates on which those individuals "forced"you to resign;
>
> (e) the circumstances of "the second series of stories in the NewYork Times," including but not limited to the dates of all publication, the titles of the articles, and the identity of all authors;
>
> (f) the circumstances in which the University "demanded" you resign as Director of the Cardiovascular Research Center, including the date of that alleged demand, the persons who conveyed that demand, and the manner in which the demand

was conveyed;

(g) the manner in which the University "took the position" of Director of the Cardiovascular Research Center "away from" you; and

(h) whether your resignation as the Chief of Cardiology or your removal as Director of the Cardiovascular Research Center resulted from, in whole or in part, an independent review of thediscipline imposed on you in 2013, and, if so, the circumstances of that independent review, including by whom itwas conducted, when it was conducted, and whether any findings were promulgated as a result.

**RESPONSE:**

a. The Plaintiff lacks sufficient knowledge and will seek to learn the identity of those individuals through discovery.

b. The Plaintiff provides all of the articles that he can find after extensive internet searching. If additional stories exist, he is unaware of them. To the best of his knowledge, news of his discipline became public through the investigative reporting of Tamar Lewin, a New York Times reporter, who he believes visited the Yale University campus and interviewed numerous Yale employees. Other news outlets then piggybacked off the New York Times reporting. When the Plaintiff requested that Provost Ben Polak investigate the breach of confidentiality, Provost Polak declined to do so.

Tamar Lewin, *Handling of Sexual Harassment Case Poses Larger Questions at Yale*, New York Times. (Nov. 1, 2014).

Tamar Lewin, *Yale Medical School Removes Doctor After Sexual Harassment Finding*, New York Times. (Nov. 14, 2014).

Carole Bass, *NYT article puts sexual misconduct back on front burner*, Yale Alumni Magazine. (Nov. 4, 2014).

Keith Button, *Yale med faculty upset by sex harassment case*, Higher Ed Dive. (Nov. 3, 2014).

Candace Stuart, *Heartache or harassment? Cardiologist at center of Yale controversy*, Cardiovascular Business (Nov. 3, 2014).

Peter Jacobs, *The New York Times Reveals Widespread Allegations of Harassment Against Women At Yale Medical School*, Business Insider (Nov. 3, 2014).

Forward Staff, *Jewish Yale Doctor Accused in Pre-Valentine's Day Love Note*

*Harassment*, Forward (Nov. 2, 2014).

Stephen Busemeyer, *Yale Doesn't Get It On Sexual Harassment*, Hartford Courant (Nov. 3, 2014).

Diane Orson & Heather Brandon, *Yale Removes Cardiovascular Research Center Director*, NPR (Nov. 17, 2014).

c. The Plaintiff's contention is that he did tender his resignation as Chief of Cardiology, but that he was forced to by Jack Elias and Robert Alpern.

d. The Plaintiff was called to a meeting in Robert Alpern's office that was attended by Alpern and Jack Elias. At that meeting, they told the Plaintiff that he was to resign the Chief of Cardiology position or face further consequences. The Plaintiff does not recollect the date.

e. Tamar Lewin, *Yale Medical School Removes Doctor After Sexual Harassment Finding*, New York Times. (Nov. 14, 2014).

f. The Plaintiff met with Gary Desir and Robert Alpern. He does not recall either the date or the location. They demanded that he resign as the Director of the Cardiovascular Research Center. The Plaintiff told them that he would not resign. They then told him that they would fire him the following day.

g. The Defendants through Gary Desir announced by email that the Plaintiff had relinquished his position as Director of the Cardiovascular Research Center. The Plaintiff never did.

h. The Plaintiff is unaware of any independent review of the UWC allegations. To the best of his recollection, no review ever took place, and he never was asked to participate in one. The UWC did not recommend these removals.

9.    In Paragraph 24 of your Complaint, you allege that you never disclosed to the media the discipline imposed or the results of the UWC investigation. Is it your contention that you have never disclosed the discipline imposed or the results of the UWC investigation? Is it further your contention that you have never publicly addressed the UWC investigation to the media? If so, please state all the facts upon which you base this contention.

RESPONSE:

To the best of his recollection, the Plaintiff has never disclosed the discipline imposed or the results of the UWC investigation. His only contacts with the media have been to take responsibility for and apologize for his actions after the

**investigation became public.**

10.   In Paragraph 27 of your Complaint, you allege that "in early 2018, one or more persons unknown sympathetic to the #MeToo movement with knowledge of the confidential UWC proceedings against Dr. Simons sought to inflict further punishment on Dr. Simons for the love letter he sent in 2010. According to Dean Alpern, these persons contacted the Berliner family, which endowed the Robert W. Berliner Professorship of Medicine, encouraging the family to demand that the university remove Dr. Simons from the professorship." In Paragraph 70 of your Complaint, you further alleged that "Despite the fact the UWC disciplinary proceedings are intended to be private and confidential, unknown defendants associated with Yale caused private information about Dr. Simons to be publicized to others for the purpose of satisfying their political agenda." In Paragraph 47, 52, 55, 63, and 71 of your Complaint, you allege that you suffered lost reputation and loss of professional

opportunities as a result of the events alleged in the Complaint.  Please state all the facts upon which you base these allegations, including but not limited to:

> (a) the basis for your information and belief that persons with knowledge of the confidential UWC proceedings, which as you allege elsewhere had previously been made public, contacted the Berliner family;
>
> (b) the basis for your allegation that persons "associated with Yale" caused information about the confidential UWC proceedings, which as you allege elsewhere had previously been made public, to be publicized to others;

26

(c)  the circumstances in which the Berliner family was contacted, including the date in "early 2018" on which that occurred, the individual Berliner family member contacted, and the substanceof the encouragement to "demand that the University remove Dr. Simons";

(d) the circumstances in which Dean Alpern related this information to you, including the manner in which he related it,the date on which he related it, and the substance of the communication;

(e) whether it is your contention that you did not suffer a loss of reputation and opportunities in 2014, when as you allege the details of the investigation concluding you sexually harassed ajunior colleague and the discipline imposed therefor were published nationally, and, if so, all the facts upon which you base this contention.

**RESPONSE:**

a. **Defendant Alpern told the Plaintiff that members of the Berliner family contacted the university and asked that he be removed from the Berliner Professorship because of the information leaked about the UWC proceedings. The Plaintiff lacks sufficient knowledge at this point to know who contacted the Berliner family, but believes that they were directly contacted since they did not protest his holding of the chair after the initial New York Times story.**

b. **The Plaintiff was vaguely aware that an organization or committee called SWIM at Yale University was actively working to secure his dismissal from various positions. He suspects that they contacted the Berliner family and informed them in detail of the UWC proceedings.**

c. **The Plaintiff lacks sufficient knowledge to answer. He will attempt to learn through discovery.**

d. **The Plaintiff does not recall the exact date that Defendant Alpern related this information. He does recall that Defendant Alpern related it to him in Alpern's office and in subsequent phone calls and discussions. He also recalls that Defendant Alpern told him that the Berliner family, specifically Nancy Berliner, wanted him removed from the chair but that Defendant Salovey and Alpern both believed that removal would be punishment and would be unjust.**

e. **The Plaintiff contends that he suffered a near total destruction of his reputation in 2014. He managed to regain some of his reputation in the sense that he was being considered for board positions and other academic or research positions including one at Novartis.**

11.    In Paragraph 37 of your Complaint, you allege that "Knowing Dr.

Simons was in London where his wife lives and works, and seemingly unable to mount an effective legal challenge to the university's actions, Defendant Alpern called Dr. Simons at around 8 p.m. London time on September 20, 2018, and told the plaintiff that the university was concerned about the public criticism directed at the university's transfer of the plaintiff to the Waldemar von Zedtwitz Professorship." In Paragraph 38 of your Complaint, you further allege that "Dr. Alpern refused to give the plaintiff more time to consider the choice." In Paragraph 50 of your Complaint, you further allege that your removal was a "craven effort to placate activists and avoid the negative publicity of further criticism and did not follow any Yale Procedures or Policies." In Paragraph 51 of your Complaint, you allege that "The summary manner of providing him notice of intent to remove him from the position, on short notice while he was out of the country, was unconscionable, and was intended to deprive him an effective right to contest the university's decision in either a court of law or before a university tribunal." Please state all the facts upon which you base these allegations, including but not limited to:

     (a) the circumstances of Dr. Alpern's call to you on September 20, 2018, including how Dr. Alpern knew you were in London and that you were seemingly unable to mount an effective legal challenge;

     (b) whether it is your contention you were in fact unable to mount an effective legal challenge, and if so, the facts upon which you base this contention, including the reasons for your voluntary withdrawal of the legal challenge seeking your reinstatement to the Von Zedtwitz Professorship;

     (c) whether it is your contention that you would have contested the University's decision before a University tribunal had you

26

been provided more notice, and if so, the facts upon which you basethis contention, including but not limited to the tribunal in which you would have brought the challenge, the manner in which you would have brought the challenge, and the then-applicable procedures to which that tribunal is subject;

(d) whether it is your contention that, had you been afforded additional time to consider the choice, you would have chosendifferently, and, if so, the facts upon which you base this contention;

(e) which contract, University policies or procedures you allegewere violated by the decision to remove you from the Von Zedtwitz Professorship; and

(f) whether it is your contention that the University's alleged summary notice and alleged violation of procedures constituteda refusal to fulfill an obligation of your employment contract fora sinister motive, and, if so, all the facts upon which you base this contention.

**RESPONSE:**

**A. Defendant Alpern knew that the Plaintiff was in London from previous phone conversations where the Plaintiff has informed him that he was in London and how long he would be staying there. Defendant Alpern knew that a legal challenge would have been virtually impossible for the Plaintiff to mount because he waited until 8 PM in the evening to call the Plaintiff to deliver the ultimatum that he must either resign the Waldemar Von Zedtwitz chair or be stripped of it by noon the following day.**

**B. The Plaintiff objects to this interrogatory in part and answers in part.**

**The Plaintiff answers the following: It is the Plaintiff's contention that he was unable to mount an effective legal challenge to the Defendants' actions. He bases this contention on the following facts. He had less than two hours after being informed by Defendant Alpern to locate counsel in Connecticut to pursue emergency litigation before ordinary business hours would close. His counsel had less than two hours to process a very complicated story and reduce it to a cogent legal theory. The Plaintiff then lay at the mercy of how fast the Connecticut courts would respond to his request for emergency injunctive relief, including whether the courts would act before the Defendants stripped him of the Von Zedtwitz chair.**

26

The Plaintiff objects to the interrogatory insofar as it is directed at the reasons why he withdrew his legal challenge seeking injunctive relief and/or reinstatement to the Von Zedtwitz chair as being protected by attorney-client privilege.

C.  The Plaintiff is not aware of whether the Defendants maintain any procedures or tribunals for dealing with incidents of subsequent and second punishments for the same offense. He, however, would have insisted on being heard before either the UWC or a faculty body. He also would have submitted formal complaints/protests in writing to either body if given the opportunity. The UWC tribunal would have been subject to the procedures outlined by the Defendants in their UWC handbook and the requirements of due process that Title IX as interpreted by the Courts requires of private universities.

D.  The Plaintiff contends that, if he had been afforded additional time, her would have attempted to use all available Yale University avenues to appeal the ultimatum instead of resulting to litigation. He would not have resigned the Von Zedtwitz chair.

E.  The Defendants violated my expectation of holding an endowed chair as promised to me in the negotiations for me to initially leave my old job and accept employment at Yale University. The Defendants also violated the UWC procedures.

F.  The Plaintiff contends that the Defendants' summary notice and violation of procedures constituted a refusal to fulfill an obligation of his employment contract for a sinister motive that he relied on to his detriment. He bases this contention on the promises made to him to ensure that he received an endowed professorship at Yale University and the subsequent promise that he would be transferred to the Von Zedtwitz professorship to avoid more drastic action.

12.    In Paragraph 40 of your Complaint, you allege that Yale has provided financial support in lieu of the Waldemar Von Zedtwitz chair in the year following removal of the chair, but is not contractually obligated to do soin the future." In Paragraphs 47, 52, 55, 57, 63, and 71, you allege that the conduct of the  University Defendants caused you to suffer lost wages. Please state all the facts upon which you base this allegation, including but  not limited to:

(a) the amount of your annual wages and benefits from the beginning of your employment by the University to the present date;

(b) the circumstances of the "financial support" provided by the University, including the individuals that arranged for this support, the dates it was provided, the amount of the support, and any communications regarding the support; and

(c) whether it is your contention that, although the University has compensated you for the loss of the Von Zedtwitz chair, you are entitled to claim wages you have not yet lost, and the bases for that claim.

**RESPONSE:**

**A & B: The Plaintiff is having difficulty locating his records to provide precise answers and will supplemental his responses as soon as possible.**

**c.  The Plaintiff is claiming that the Defendants have not adequately compensated him for the loss of the Von Zedtwitz chair because the Von Zedtwitz chair's benefits are permanent and increase over time while the financial support provided by the Defendants is discretionary and will likely be removed.**

13.    In Paragraph 65 of your Complaint, you allege that you are a Caucasian male. In Paragraph 66 of your Complaint, you allege that "The defendants have never punished a female multiple times for the same conduct in any disciplinary action involving sexual harassment." In Paragraph 67 of your Complaint, you allege that "Upon information and belief, the defendants have subjected only Caucasian males to punishment twice for the same conduct." In Paragraph 68 of your Complaint, you allege, "The defendants acted intentionally and in a discriminatory manner in regard to Dr. Simons for the express purpose of placating those #MeToo activists and sympathizers in the grip of moral panic and self-righteous indignation." Please state all the facts upon which you base these allegations, including but not limited to:

(a) The identity of any similarly situated female University

employees who were subject to any disciplinary action involvingsexual harassment;

(b) the identity of any similarly situated female University employees disciplined for the same or similar conduct for whichyou were disciplined;

(c) the identity of any similarly situated female University employees subject to discipline for sexual harassment of ajunior colleague;

(d) the identity of any similarly situated male University employeesdisciplined twice or more for the same or similar conduct for which you were disciplined;

(e) the identity of any similarly situated male University employees disciplined twice or more for any single act; and

(f) whether it is your contention that you were removed from the Von Zedtwitz Professorship because you are Caucasian, and, if

so, all the facts upon which you base that contention.

**RESPONSE:**

**A through E: The Plaintiff lacks sufficient knowledge to answer. He will seek to learn the answers by discovery in this action. To the best of his knowledge, he is the only person who has been punished multiple times for the same offense.**

**F. The Plaintiff's contention is that he was removed from the Von Zedtwitz Professorship because he is a Caucasian male. He bases the contention on the representations made to him by Dr. Alpern that the increasing pressure by the public for his alleged misconduct forced the Defendants to act. He contends that pressure and public opinion was biased against men accused of sexual misconduct simply because they are accused men and that the Defendants de facto adopted the bias in making their decision to remove him from the Von Zedtwitz Professorship.**

14. Identify each physical, mental or emotional injury that you

attribute to the events alleged in your Complaint, and for each physical,

mentalor emotional injury so identified, state the name and address of each

physician,therapist or other source of treatment for those injuries, the date(s)

26

of treatment, and the condition(s) for which you were so treated.

**RESPONSE:**

**The Plaintiff experienced prolonged depression leading to a loss of productivity and severe emotional distress. The Plaintiff did not see any physician or therapist because he himself is a well-respected physician. He treated himself by taking time off, engaging in meditation, and behavioral therapy.**

15.   Identify each economic injury that you attribute to the events alleged in your Complaint, and for each economic injury state the amount of that injury, the date of that injury, and actions you have taken to mitigate your damages, if any, including the nature of the action, the date when each such action was taken, and identify of all the parties involved in the action including but not limited to all periods of full or part-time work, job searches, interviews with potential employers, results of interviews, collection of unemployment benefits, work as a sole proprietor, independent contractor or employee, education including course work, certificates or degrees, etc.

**RESPONSE:**

**The Plaintiff lost the following opportunities:**

- **A nomination to the National Academy of Sciences, which would have led to an avalanche of industry and academic advisory positions that are quite lucrative.**
- **Global Head of Translational Research at Novartis, which the Plaintiff estimates would have paid him $1,500,000 annually.**
- **Endowed professorship and center directorship at John Hopkins University, which the Plaintiff estimates would have brought him $750,000 in income annually.**
- **Endowed professorship and center directorship at the University of Virginia, which the Plaintiff estimates would have brought him $500,000 in income annually.**
- **Endowed professorship and center directorship at Northwestern University, which the Plaintiff estimates would have brought him $500,000 in income annually.**

- **Welcome chair/department leader at University College of London, which the Plaintiff estimates would have brought him $350,000 in income annually.**

**The Plaintiff took the following steps to mitigate:**

- **He retained a reputation repair and defender service called Reputation Defender, which cost him $25,000 over the course of three years.**
- **He engaged in conversations – the traditional way to search for new positions at his level – with the companies and universities listed above, and interviewed where he could.**

16.     Identify the statutory basis for your claimed attorney's fees in the amount of $25,000.

**RESPONSE:**

**42 U.S.C. § 1988(b).**

17.     Identify each and every offer of employment made to you sinceJanuary 1, 2008.

**RESPONSE:**

**None.**

18.     Identify each and every board directorship you have held sinceJanuary 1, 2008, and the compensation therefor.

**RESPONSE:**

**None.**

19.     Identify each and every academic, professional, and research position that you held between January 1, 2008 and the present date, and thecompensation therefor.

**RESPONSE:**

**The Plaintiff is unsure as to his exact compensation at this time and as to every position that he has held. He reserves his right to supplement this answer along with**

**documentation.**

**Tenured Professor of Medicine – Yale University = compensation TBD.**

**Robert W. Berliner Professorship – Yale University = compensation TBD**

**Waldemar Von Zedtwitz Professorship – Yale University – compensation TBD**

**Chief of Cardiovascular Medicine – Yale School of Medicine – compensation TBD**

**Chief of Cardiovascular Medicine – Yale-New Haven Hospital – compensation TBD**

**Director of the Yale Cardiovascular Research Center – compensation TBD**

**Member - Yale School of Medicine Steering Committee, Vascular Biology and Therapeutics – compensation TBD**

**Member - Yale University Provost's Committee On Cooperative Research – compensation TBD.**

**Member – Joint Strategy Committee for Yale-UCL Collaborative – compensation TBD**

**NIH/SEP – Grant Review – compensation TBD**

**Co-Founder & Scientific Advisory Board Chair – VasoRX – compensation TBD.**

**Additional positions will be supplemented.**

## REQUESTS FOR PRODUCTION

1.      Copies of any statements identified in response to Interrogatory 2.

**RESPONSE:**

   None.

2.      Copies of any documentation of any disciplinary history

identifiedin response to Interrogatory 4.

**RESPONSE:**

**See attached.**

3.     Copies of any and all reviews or terms identified in response toInterrogatory 5.

**RESPONSE:**

**See attached.**

4.     Copies of any and all documents that you, or anyone acting on your behalf, consulted and/or referred to in connection with the preparation of the answers to the Interrogatories, except for documents protected by a recognized privilege of non-production.

**RESPONSE:**

**See attached.**

5.     Copies of any and all documents in your possession, custody orcontrol that concern, reflect or evidence each and every non-privileged communication you had with any person relating to the allegations of the Complaint, including but not limited to the communications identified in response to interrogatories 10, 11 and 12.

**RESPONSE:**

**See attached. The Plaintiff is still searching to make sure he fully satisfies this request.**

6.     Without limiting any other request, copies of any and all documents in your possession, custody or control that concern, relate toand/or support the allegations of the Complaint.

**RESPONSE:**

**See attached.**

7.    Any and all diaries, calendars, records and/or documents in your possession, custody or control that concerns or relates to the events alleged in the Complaint.

**RESPONSE:**

**See attached.**

8.    Copies of any drafts, contracts, terms or communications identifiedin response to Interrogatory 6.

**RESPONSE:**

**See attached.**

9.    Copies of any procedures or policies identified in response toInterrogatory 6.

**RESPONSE:**

**See attached.**

10.    Copies of any submissions or documentation identified in responseto Interrogatory 7.

**RESPONSE:**

**See attached.**

11.    Copies of any conclusions, findings or recommendations identifiedin response to Interrogatory 7.

**RESPONSE:**

**See attached.**

12.    Any and all documents in your possession, custody or control that concern or relate to any complaint that you have filed with the Equal

Employment Opportunity Commission and/or the Commission on Human Rights & Opportunities to complain about the manner in which you have beentreated by any current or former employer.

**RESPONSE:**

 **See attached.**

 13. Any and all documents in your possession, custody or control thatconcern or relate to your claim that the University has discriminated against you in violation of Title VII or Title IX.

**RESPONSE:**

 **See attached.**

 14. Your complete state and federal tax returns and wage statements from 2013 through to the time of trial, or written authorization to inspect and make copies of said documents.

**RESPONSE:**

 **See attached. The Plaintiff is still working to supplement this request.**

 **15.** Any and all documents referred to or encompassed by youranswers to the Interrogatories propounded simultaneously herewith. **RESPONSE:**

 **See attached.**

16. Without limiting any other request, any and all documents concerning, relating or evidencing your claimed damages, including, but not limited to, the alleged "lost wages and benefits" and "lost wages, lostreputation, emotional distress and suffering, loss of professional opportunities."

**RESPONSE:**

   **See attached.**

   17.    Copies of any correspondence between you and the University relating to the allegations of the  Complaint, including between you and RobertAlpern, President Salovey, Nancy Berliner, Dr. Doe, Dr. Roe, Benjamin Pollak, Richard D'Aquila, Jack Elias, Carolyn Mazure, Jonathan Tamir, Stephanie Spangler, and  Darin Latimore, dated between January 1, 2018 and the date oftrial.

**RESPONSE:**

   **See attached. The Plaintiff is still working to supplement this request.**

   18.    Any and all records and reports of all doctors and all other care providers that concern or relate to treatment allegedly received by you as a result of the events alleged in your Complaint, and to the emotional conditions from which you claim to suffer, or to which reference is made in your answers to the Interrogatories, or written authorization to inspect and  make copies of said reports and records.

**RESPONSE:**

   **None.**

   19.    All documents that you intend  to introduce as  evidence at  trial.

**RESPONSE:**

   **See attached. The Plaintiff reserves the right to continue to timely supplement.**

   20.    Any and all documents concerning, reflecting or evidencing your

attempts (or the attempts of anyone else acting on your behalf) to find employment and/or earn income in any other way other than your employmentwith the Un iversity. This request includes, but is not limited to, any and all resumes, cover letters, applications, and/or thank youletters that you produced during your job search.

**RESPONSE:**

   **The Plaintiff is still working to respond to this request.**


                                              THE PLAINTIFF, Michael Simons

                                              By: /s/ NORMAN A. PATTIS /s/
                                              NORMAN A. PATTIS
                                              PATTIS & SMITH, LLC
                                              383 Orange Street
                                              New Haven, CT 06511
                                              TEL: 203.393.3017
                                              npattis@pattislaw.com
                                              ct13120

<u>**CERTIFICATION**</u>

   This is to certify that copies of the following were sent electronically to all counsel of record electronically.

                                              By: /s/ NORMAN A. PATTIS /s/


26