# Exhibit L

```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT


 - - - - - - - - - x
MICHAEL SIMONS,           |
          Plaintiff,      |
                          |   3:19-CV-01547(VAB)
       v.                 |
                          |
YALE UNIVERSITY,          |
PETER SALOVEY,            |
ROBERT ALPERN, M.D.,      |
UNKNOWN PERSONS,          |
          Defendants.     |   July 16, 2021
 - - - - - - - - - x
```

DEPOSITION OF ROBERT ALPERN, M.D.

via videoconference

Taken before Kristine A. Paradis, LSR 338, a Court Reporter and Notary Public within and for the State of Connecticut, pursuant to Re-Notice and the Federal Rules of Civil Procedure, via videoconference, on July 16, 2021, commencing at 10:13 a.m.

FALZARANO COURT REPORTERS, LLC
4 Somerset Lane
Simsbury, Connecticut 06070
860.651.0258
www.falzaranocourtreporters.com

```
 1   APPEARANCES:

 2        For the Plaintiff:

 3             PATTIS & SMITH, LLC
               383 Orange Street
 4             New Haven, Connecticut 06511
               203.393.3017
 5             npattis@pattisandsmith.com
                    BY:  NORMAN A. PATTIS, ESQ. **
 6

 7        For the Defendants Yale University,
          Peter Salovey, and Robert Alpern, M.D.:
 8
               CLENDENEN & SHEA, LLC
 9             400 Orange Street
               New Haven, Connecticut 06511
10             203.787.1183
               kcs@clenlaw.com
11                  BY:  KEVIN C. SHEA, ESQ. **

12
          Also Present:
13
               Cameron Atkinson, Esq. **
14             Pattis & Smith, LLC

15

16

17

18

19

20   ** Via videoconference

21

22

23

24

25
```

```
 1                    S T I P U L A T I O N S
 2
 3            It is stipulated and agreed by counsel for
 4   the parties that all objections are reserved until
 5   the time of trial, except those objections as are
 6   directed to the form of the question.
 7            It is stipulated and agreed between counsel
 8   for the parties that the proof of the authority of
 9   the Notary Public, before whom this deposition is
10   taken, is waived.
11            It is further stipulated that any defects
12   in the Notice are waived.
13            It is further stipulated that the
14   deposition may be signed before any Notary Public.
15
16              T R A N S C R I P T   L E G E N D
17
     (sic)             - Exactly as said.
18
     (Phonetic)        - Exact spelling not provided.
19
     ( -- )            - Break in speech continuity
20                       and/or interrupted sentence.
21   (...)             - Indicates omission of word[s]
                         when reading OR trailing off
22                       and not finishing a sentence.
23   (As read)         - When reading, adding,
                         deleting or changing words so
24                       as not to be a direct quote
                         from document.
25
```

1       A    -- at the bottom it says, Various
2    members of SWIM, university officers, faculty
3    advisory council, the leadership of the medical
4    school, and chairs and center directors.
5       Q    Okay.
6       A    So, that's basically what I've been
7    talking about is those four lines.
8       Q    I wanted to make sure I understood.
9            When you spoke to Tina Tyson, were you
10   speaking to her for the purposes of obtaining
11   legal advice?
12      A    Yes, sir.  My --
13              MR. SHEA:  I want you to answer
14         that question first.
15              THE WITNESS:  Yes.
16              MR. SHEA:  Okay.
17              MR. PATTIS:  No further questions
18         on that.
19   BY MR. PATTIS:
20      Q    I assume the same is also true of
21   Caroline Hendel?
22      A    Yes.
23      Q    No further questions on that.
24           Is the same also true of Alexander
25   Dreier?

```
 1        A    Yes.
 2        Q    No further questions on that.
 3             Stephanie Spangler, however, is not a
 4   lawyer, correct?
 5        A    Correct.
 6        Q    Did you ever speak to Stephanie Spangler
 7   about this topic outside the presence of a lawyer
 8   for Yale University?
 9        A    Yeah, I don't think Stephanie --
10   Stephanie and I, I believe, had early
11   conversations about how to manage Nancy Berliner
12   and that Stephanie would handle that.  When -- and
13   then after that I think it was all through
14   counsel.
15        Q    Did Stephanie ever say to you, Look,
16   we're going to have problems in court on Title IX
17   if we remove the chair at this late date.  Did she
18   ever say that?
19        A    No.  I never had any conversations with
20   her on that.
21        Q    Well, did she ever send you an e-mail to
22   that effect?
23        A    Oh, no.
24        Q    Now, when Dr. Simons was removed, I
25   understand effective September 21, 2018 from his
```

```
 1   chair -- the Von Zedtwitz chair, correct?
 2        A    Yes.
 3        Q    And I recall that because that's my
 4   birthday.  I don't know why you timed it that way,
 5   but you did.
 6             -- when in relation to that date was the
 7   decision made to tell him you must resign or we
 8   will take the chair from you?
 9        A    The decision was made I think on the
10   20th.  I think it was a Thursday.
11        Q    It was.
12        A    Yes.
13        Q    The 20th was a Thursday.  Whether that
14   was the day you made the decision --
15        A    I made the decision that day and I was
16   heading to Washington D.C. and arranged with Mike
17   to speak to him from Washington.
18        Q    You knew he was in London at that time?
19        A    I did, yes.  Well, I think he informed
20   me when I reached out to him.
21        Q    You didn't call him at a number that you
22   associated with London or England?
23        A    I don't remember how I reached out to
24   him, whether I texted him, but -- I don't remember
25   whether I texted him or e-mailed him.  But I
```

```
 1   probably texted him and said we need to speak and
 2   we set up a time that was convenient for him in
 3   London and was convenient for me in Washington
 4   D.C.
 5       Q    Why the urgency?  In other words, when
 6   you spoke to him, you basically said you have
 7   until tomorrow at noon to make this decision.  Why
 8   the urgency?
 9       A    So, this was really advice from --
10            MR. SHEA:  Okay.  Let me -- I
11            didn't know if you were going to get
12            back to the thing you said earlier about
13            the -- I did not foresee that this was
14            calling for attorney-client privileged
15            communications.  But I thought he was
16            going to get back to this earlier when
17            he was talking about the longer every
18            day that went on.
19                 So, Doctor, if your answer about
20            the timing would require you -- you can
21            just say whatever, it resulted from
22            communications with counsel.  You can
23            just say -- I don't want you to disclose
24            the contents of attorney-client
25            privileged communications.
```

```
 1                  But maybe if you just read back his
 2           answer -- or the question, rather --
 3           Kristine.
 4                  MR. PATTIS:  Let me just ask it
 5           again, Kevin.
 6   BY MR. PATTIS:
 7       Q    As I understand it, Doctor -- and
 8   correct me if I'm wrong -- you have a
 9   communication with Dr. Simons late in the day on
10   Thursday, September 20th regarding his leaving the
11   Von Zedtwitz chair, correct?
12       A    Yes.
13       Q    And in that communication you tell him
14   You must -- if you don't resign by noon tomorrow,
15   we're going to take the chair from you, or words
16   to that effect, correct?
17       A    Correct.
18       Q    Why such a short timeframe?
19       A    That was advice from counsel.
20       Q    Okay.  So, advice of counsel.
21            Didn't Dr. Simons tell you he wanted
22   more time to consult a lawyer?
23       A    I don't -- I think he did want more
24   time.  I don't remember him saying to consult a
25   lawyer.
```

```
 1        Q    Prior to September 20th had you
 2   discussed with him the possibility that he might
 3   be removed from the Von Zedtwitz chair?
 4        A    I don't think so.
 5        Q    Are you saying, sir, that while he was
 6   in London you called him and gave him less than 24
 7   hours to resign a chair or he would be removed
 8   from it?
 9             MR. SHEA:  Object to the form of
10        the question.
11             THE WITNESS:  Yes.
12   BY MR. PATTIS:
13        Q    Did that strike you as indecent?
14             MR. SHEA:  Object to the form.
15             THE WITNESS:  I think it's on
16        advice of counsel.
17             MR. SHEA:  Okay.
18             MR. PATTIS:  Okay.  Well, I'm going
19        to ask this, Kevin.  You may object, so
20        I'm giving you a heads-up.
21   BY MR. PATTIS:
22        Q    Who gave you that advice?  Can you give
23   us the name?
24             MR. SHEA:  I'm going to object and
25        instruct him not to answer because I
```

Falzarano Court Reporters, LLC

```
1        think you're asking him to disclose the
2        contents of communications.  You're
3        saying why did he do that?  He said,
4        Based on advice of counsel.
5            MR. PATTIS:  So, here's where we're
6        going with that, Kevin, and I may be
7        wrong on this.  But I want to give you a
8        chance to think about it.  We've got
9        three named defendants and then a class
10       of defendants who remain unnamed and may
11       forever.  One is Yale, one is
12       Mr. Salovey, one is Mr. -- Dr. Alpern,
13       excuse me, sir, and then the unknown
14       persons.
15           To the degree that Yale is a party
16       and we've got a claim, I think one of
17       them is for wrongful termination,
18       although I can't recall that off the top
19       of my head.
20           MR. SHEA:  That's been stricken.
21           MR. PATTIS:  Well, to the degree we
22       have a claim against Yale and one of its
23       agents orchestrates a firing on less
24       than 24 hours without notice under these
25       circumstances, I think that's
```

1  STATE OF CONNECTICUT

2  I, KRISTINE A. PARADIS, LSR 338, a Notary Public
3  duly commissioned and qualified in and for the State
4  of Connecticut, do hereby certify that pursuant to
5  Re-Notice, there came remotely before me via
6  videoconference on the 16th day of July, 2021, the
7  following named person, to wit: ROBERT ALPERN, M.D.,
8  who was by me duly sworn to testify to the truth and
9  nothing but the truth; that he was thereupon
10 carefully examined upon his oath and his examination
11 reduced to writing under my supervision; that this
12 deposition is a true record of the testimony given by
13 the witness.

14 I further certify that I am neither attorney nor
15 counsel for, nor related to, nor employed by any of
16 the parties to the action in which this deposition is
17 taken, and further, that I am not a relative or
18 employee of any attorney or counsel employed by the
19 parties hereto, or financially interested in this
20 action.

21 IN WITNESS THEREOF, I have hereunto set my
22 hand this __29th__ day of ____July____, 2021.
23                              _Kristine Paradis_
24                              KRISTINE A. PARADIS, CSR #338
                                Certified Shorthand Reporter
25 My Commission expires:  May 31, 2023